George F. X. MoInerkey, J.
This is an article 78 proceeding challenging the power of the Planning Board to require the dedication of a certain strip of shore front to the town as a condition for the approval of a proposed residential subdivision.
Edward J. Hoffritz, by Gainsburg, Gottlieb, Levitan & Cole, Esqs., appeared with the permission of the court amicus curiae.
The subdivision in issue is a rectangular tract of about 23 acres, being approximately 557 feet on Long Island Sound and running southerly about 2,000 feet. Thirty building plots are contemplated.
The elevation of the tract is over a hundred feet except for the most northerly 420 feet which extend from the high-water line to the north face of the terminal moraine and are barely above sea level. This strip is unsuitable for home construction.
The Planning Board, properly concerned with the rapidly diminishing availability of public shore front and littoral, and being aware of the unique suitability of a beach front for recreational purposes, requires that the petitioner dedicate to the town a strip of land 80 feet wide from the high-water line .across the entire frontage.
Petitioner declines on several grounds, only two of which have to be resolved herein. First, petitioner maintains that the land to be set aside in a subdivision is to be selected by the subdivider and if the .selection is deemed unsuitable by the Planning Board, *620 the board then has the option to either waive the land requirement or impose a .recreational fee in its place.
Second, petitioner claims that in any event the taking of the beach front on this subdivision would be confiscatory because of the disproportionate value of the strip in relation to the balance of the tract.
The relevant power of a Planning Board is found in subdivision 1 of section 277 of the Town Law and reads in pertinent part: “Before the .approval by the planning board of a plat showing lots, blocks or sites, with or without streets or highways, or the approval of a plat already filed in the office of the clerk of the county wherein such plat is situated if such plat is entirely or partially undeveloped, such plat shall also show in proper cases and when required by the planning board, a park or parks suitably located for playground or other recreational purposes.”
It should be noted that this statute does not explicitly require dedication of the park area to the town, and in fact subdivision 1 of section 278 provides: “ After such plat is .approved and filed, subject, however, to review by court as hereinafter provided, the streets, highways and parks shown on such plat shall be and become a part of the official map or plan of the town. The owner of the land, or his agent who files the plat, may add as part of the plat a notation, if he so desires, to the effect that no offer of dedication of such streets, highways or parks, or any of them, is made to the public. If the owner of the land or his agent who files the plat does not add as part of the plat a notation to the effect that no offer of dedication of such street, highways or parks, or any of them, is made to the public, the filing of the plat in the office of the county clerk or register shall constitute a continuing offer of dedication of the streets, highways or parks, or any of them, to the public and said offer of dedication may be accepted by the Town Board at any time prior to revocation of said offer by the owner of the land or his agent.”
These two statutes read together envision a plan by which suitable open spaces are to be provided on subdivisions and become part of the official map to insure that they do not become built upon. (Town Law, § 280-a; Anderson, Zoning Law and Practice in New York State, §§ 14.01, 14.08.)
If suitable open space is unavailable an alternative is given to the town by subdivision 1 of section 277 of the Town Law (L. 1967, ch. 348, § 1): “If the planning board determines that a suitable park or parks of adequate size can not be properly located in any such plat or is otherwise not practical, the board *621 may require as a condition to approval of any such plat a payment to the town of a sum to be determined by the town board, which sum shall constitute a trust fund to be used by the town exclusively for neighborhood park, playground or recreation purposes including the acquisition of property.”
This was an amendment to the original authority given by chapter 846 of the Laws of 1959 which had been held unconstitutional in Gulest Assoc. v. Town of Newburgh (25 Misc 2d 1004, affd. 15 A D 2d 815) and perhaps was the reason for the 1967 amendment. If so, it proved unnecessary since Gulest was overruled in Jenad, Inc. v. Village of Scarsdale (18 N Y 2d 78). No direct issue has arisen herein as to the power of the board to impose a fee for recreational purposes in lieu of land, but it does have an indirect relevancy.
The subdivision regulations of the board provide in section 22: “ A. Area. Each subdivider shall dedicate to the Town of Brookhaven an area for recreational purposes suitable in character and of an area representing 1,500 square feet for each buildable plot as shown on the final map or maps approved by the Planning Board. If, in the opinion of the Planning Board, the proposed park area is not practical in size or that there is already adequate facilities for recreation in the area, a recreational fee will be required in lieu of the park area, or the Planning Board may require the subdivider to dedicate a recreation area and pay a recreational fee provided that the area dedicated and the fee paid, when taken together, do not exceed the total recreational requirement.
“ B. Recreational fees: Where a fee is to be paid in lieu of dedicating land, the fee shall be $195.00 per lot in Residence Districts A, Al, Bl, B, C, and D.”
Inherent problems instantly arise under this section when an attempt is made to equate the value of the fee and the value of the land per plot, since obviously there would be a great disparity of value between a fee of $195 for a building plot worth $20,000 and 1,500 square feet of the same land.
The determination of the value of the land sought to be dedicated here becomes germane because of the contention of the petitioner that the value of the land is so disproportionate to the value of the whole tract that confiscation results.
The first objection of the petitioner — that the Planning Board cannot dictate which land is to be dedicated — can be answered obliquely. In the court’s opinion the statutes do not even give.the Planning Board the right to insist upon dedication, but only give it the right to determine and set aside which, if any, part of the entire tract is suitable to “ show in proper *622 cases * # * a park # # * suitably located for playground or other recreational purposes ”.
If the clear wording of section 278 of the Town Law is to be given effect, the petitioner may comply with the statute by designating the 80-foot strip as a park area for the subdivision and then making a notation on the map that it is not being offered for dedication. In fact the petitioner plans that the beach area be used by all those living on this subdivision, but objects to anyone else using it.
Pragmatically the park area is normally selected by mutual discussion and agreement and these present issues would not have arisen had the property not been . unique as will be discussed.
The most pertinent case in this State seems to be Jenad, Inc. v. Village of Scarsdale (supra). The court held, in a 4-3 decision, that the part of the statute (Village Law, § 179-1; cf. Town Law, § 277) giving the board the power to require a sum of money in lieu of land was constitutional. ■ The legal issue is clearly stated in the opinion, and refutes the argument that the choice of land or money is the petitioner’s. The choice is the board’s.
The direct issue of whether the board cannot only insist upon park areas being set aside on the map but also upon their dedication is not so clear. Judge Van Vooksis in his dissent discusses this point at length. The majority opinion phrases the legal question only with respect to a fee, although it later speaks of dedication without discussing the difference, if any.
Even assuming that the board does have the power to require dedication, .standards of due process and reasonableness must still prevail; some limit must be reached beyond which the board may not go.
Testimony disclosed that the petitioner paid $208,000 for the entire tract. Two qualified real estate experts testified that in their opinion the value of the tract at the time of sale would have been decreased by over $90,000 if the 80-foot .strip were in public ownership, and the court finds this as a fact. The expert for the defendant testified that in his opinion ownership by the town of the proposed strip would only have a nominal effect upon the value of the tract. This opinion was based, however, upon an erroneous assumption; i.e., that the public would never use the strip. This assumption is based on the fact that the only approach to the strip is from the waters of the Long Island Sound and not many people could use it. This may not be so even factually. Many people who own shallow draft boats use the Long Island Sound and presumably would be entitled to *623 land, fish, and picnic on the strand. In addition, if the contiguous property were to be acquired by the town at a later date, the strip might well become part of a larger public park. Finally, a likely possibility would depreciate the value of the lots to a prospective buyer; the possibility, if not probability, that the town would condemn a narrow right of way to the beach and provide access to it for the public. The mere fact of public ownership would cause such a fear, whether realistic or not.
It was testified that the value of a shore-front lot on the tract was well over $20,000. A person who is willing and who can pay this sum for a building plot and erect upon it a suitable home is rarely enamored of the prospect of viewing the public between his living room and the panorama of Long Island Sound. Whatever the sociological import of such an attitude be, it is a fact that it reduces the value of shore-front property, and in this case by over a third. The question is not whether this is fair, sensible or patriotic; the question is whether such ownership would cause this result.
It is admitted that under the area requirements the petitioners would be required to set aside roughly an acre of land, or about two building plots, under the present zoning classification. The average sale price of the proposed 30 lots would come to $6,933 each, or $14,000 for the two lots (although in fact the waterfront ones are far more valuable, and the remainder proportionately less valuable).
However, by selecting the shore front, the town in effect would be requiring $92,000 of value, even though the petitioner would not be losing any building lots, .since the four shore lots are oversized. Indeed, if defendants ’ contention that the dedication of the strip would have only a nominal effect upon the value of the whole tract is valid, the petitioner, it would seem, would be happy to agree, since it would save him the loss of the two building lots. Normally the .subdivider is more anxious than the town to dedicate the streets and parks on his map since it removes the burden of maintenance from the owners and only the uniqueness of this subdivision has caused the present resistance.
The intent of the Planning Board is laudable, but its demand is confiscatory. The proceeding is remitted to the Planning Board for action consistent with this opinion. Submit order.