■ In the Matter of OAKWOOD COMPANY, Respondent, v PLANNING BOARD OF THE TOWN OF HUNTINGTON, Appellant. — In two proceedings pursuant to CPLR article 78 to review determinations of the Planning Board of the Town of Huntington pertaining to the subdivision of petitioner's property, the planning board appeals (1) from stated portions of a judgment of the Supreme Court, Suffolk County (Thom, J.), dated September 15, 1978, which, *inter alia,* annulled its determination dated October 27, 1976, denying petitioner approval of its preliminary map for conventional development of the subject real property, and (2) as limited by its brief, from so much of a further judgment of the same court, dated April 2, 1981, as annulled its determination dated May 14, 1980, denying petitioner approval of its preliminary map for cluster development of the subject property, and granted petitioner the option of either an approval of the original conventional subdivision map or a hearing on damages for a *de facto* taking of petitioner's property without compensation. Judgment dated September 15, 1978 reversed insofar as appealed from, on the law, without costs or disbursements, determination confirmed and proceeding dismissed on the merits. Judgment dated April 2, 1981 modified, on the law, by deleting the second decretal paragraph and substituting therefor a provision approving petitioner's cluster development map providing for 17 dwelling units. As so modified, said judgment affirmed insofar as appealed from, without costs or disbursements. Petitioner is the owner of approximately 5.1 acres of property located on the west side of Oakwood Road, in the Town of Huntington. On August 12, 1976 petitioner filed a formal application with the planning board for preliminary approval of a conventional development map, consisting of 11 one-family units and 7 two-family units. At the close of the public hearing on that application, petitioner submitted, as an alternative, a cluster development map, consisting of 24 units. The planning board's determination denying approval of the conventional development map on the ground that the proposed construction would have an adverse effect upon traffic safety along Oakwood Road and a severe adverse impact on the environment, had a rational basis and was supported by substantial evidence in the record. The conventional development map provided vehicular access from three one-family and five two-family units directly onto Oakwood Road, a heavily traveled county road with a high accident rate. Due to the steep topography, the driveway gradients would range from 12% to 14%, creating a safety hazard for prospective residents and travelers on this county route during adverse weather conditions. The map also contained a cul-de-sac, designated Oakwood Court, providing ingress to and egress from eight additional units onto Oakwood Road. The director of the town planning depart-

ment, the conservation board and the department of engineering, building and housing found the map objectionable due to its adverse effect upon the safe flow of traffic on Oakwood Road. The commissioner of public works "provisionally approved" the map upon the condition that "[a]lternate layouts should be explored" to eliminate the driveway access points on Oakwood Road. Accordingly, the planning board properly considered the impact of the proposed conventional development on safety in denying approval of said map. (See *Matter of Ozols v Henley,* 81 AD2d 670; *Holmes v Planning Bd. of Town of New Castle,* 78 AD2d 1, 13.) Although the conventional development map complied with the zoning ordinance then in effect, and petitioner's three expert witnesses presented testimony at the public hearing that all surface water runoff would be contained within the subject property during construction and there would be no soil slippage or sedimentation after the landscape was restored, the department of environmental protection submitted a comprehensive 27-page analysis supporting a contrary conclusion. Where conflicting inferences may be drawn from the evidence, it is the duty of a planning board to weigh the evidence and to exercise its discretion in approving or denying approval to a preliminary map. (*Matter of Currier v Planning Bd. of Town of Huntington,* 74 AD2d 872.) Since the environmental impact statement provided substantial evidence that the projected construction would devastate and destroy the existing topography and have a severe adverse impact on the environs, a rational basis existed for disapproval of the conventional development map. (See *Matter of Loram Dev. Corp. v Planning Bd. of Town of Huntington,* 53 AD2d 670.) Accordingly, the court erred in substituting its judgment for that of the planning board. Upon annulling the determination, however, Special Term directed petitioner to submit an application for cluster development of its property. (See *Matter of Loram Dev. Corp. v Planning Bd. of Town of Huntington, supra.*) The planning board has not appealed from that direction. With respect thereto, we note that the Suffolk County Department of Planning, the town planning director and the staff of the planning board had suggested a cluster development, with no access to Oakwood Road, as a viable alternative to conventional development of petitioner's property. In regard to the second judgment, we concur with the court's finding that there was no rational basis for the planning board's disapproval of the cluster development map consisting of 17 units, which the parties agree was submitted by petitioner for final approval in February, 1980. Under this plan, the majority of the parcel would remain untouched, in its natural state. The danger of traffic congestion and safety on Oakwood Road had been eliminated since the only access to the proposed development was from a road to the west of the property. The conservation board and department of environmental protection found the plan to be an environmentally sound solution to a difficult development problem. The department of engineering, building and housing withdrew its initial objections to drainage and gradient problems on the access road, after revisions made by petitioner's engineer complied with the department's requests. The only arguable reason for disapproval of the cluster development map, with the exception of impermissibly seeking to retain the property in its natural state without just compensation, was an alleged violation of a new amendment to the zoning ordinance, the steep slope ordinance. On May 16, 1979, the planning board agreed to accept a yield of 15 units for the 5.1-acre parcel, plus an additional two units if petitioner would dedicate its noncontiguous .4-acre parcel, 200 feet north of the subject property, to the town as a drainage basin and park. Petitioner agreed. At the request of the planning board, petitioner retained an engineer and prepared and submitted detailed engineering drawings and a map in final form in accordance with the determination of the planning board to allow the construction of 17 units. On February

27, 1980, the planning board reviewed the submitted drawings and found the plan acceptable and in accordance with the plan suggested by it. At the public hearing held April 2, 1980, the chairman of the planning board noted that petitioner's calculation of the number of units was in accordance with the steep slope ordinance and that "our staff checked it." Accordingly, the planning board's denial of approval of the cluster development map on the ground that 17 units exceeded the permissible number under the zoning ordinance is not supported by the record. Petitioner is, therefore, entitled to a judgment that the cluster development map, consisting of 17 dwelling units, is approved. We note that petitioner is not entitled to damages for a *de facto* taking of its property as an alternative relief granted in the judgment dated April 2, 1981. Since a cluster development map is approved, petitioner has not been deprived of the use of its property for any purpose for which it is reasonably adapted. Damiani, J. P., Mangano, Gulotta and Niehoff, JJ., concur.