# In the Matter of CARL KAMHI, Respondent, v PLANNING BOARD OF THE TOWN OF YORKTOWN, Appellant.

Second Department, October 12, 1982

### APPEARANCES OF COUNSEL

*Arthur J. Selkin, Town Attorney* for appellant.

*Cuddy & Feder* (*Ruth E. Roth* of counsel), for respondent.

### OPINION OF THE COURT

RUBIN, J.

This case squarely presents the issue of how far a town planning board may go in imposing conditions on approval of cluster subdivision plats pursuant to section 281 of the Town Law.[1] Specifically, the question presented is whether a town planning board has the legal authority under

---

1. Section 281 of the Town Law provides, in pertinent part:

"The town board is hereby empowered by resolution to authorize the planning board, simultaneously with the approval of a plat or plats pursuant to this article, to modify applicable provisions of the zoning ordinance, subject to the conditions hereinafter set forth and such other reasonable conditions as the town board may in its discretion add thereto. Such authorization shall specify the lands outside the limits of any incorporated village to which this procedure may be applicable. The purposes of such authorization

section 281 to condition approval of a subdivision plat on the mandated dedication of open space to the town. Though Special Term answered this in the negative, we find ample authority under section 281 of the Town Law for such condition.

## THE FACTS

The subject property, owned by petitioner, consists of approximately 11 acres of heavily wooded land within an R-1-40 zoned district (one family residential, 40,000 square feet minimum lot size). A brook running north to south traverses the property and the land adjacent to it qualifies under the Yorktown Drainage Law as a wetland. The soil conservation service and the town conservation board have established a 100-year flood plain which includes the 4.5 acres of open space at issue in this case. During prolonged heavy rainfall and high intensity storms, overflows from this brook have inundated the land.

In July, 1976, petitioner applied to the department of planning to develop the 11 acres. Although it was his intent to build in a cluster, he submitted two maps, one showing a conventional subdivision and the other showing a cluster scheme. Section 281 of the Town Law states that clustering techniques cannot be utilized until a lot count is ascertained from a conventional plan. This is to insure that utilization of clustering does not result in more dwelling units than would be permitted if the land were subdivided into lots conforming to minimum lot size requirements (Town Law, § 281, subd [b]).

Initially, the department of planning found only four acceptable lots. Thereafter, alternate layouts were designed to arrive at a higher count. Several detailed discussions surrounding the count ensued at subsequent plan-

---

shall be to enable and encourage flexibility of design and development of land in such a manner as to promote the most appropriate use of land, to facilitate the adequate and economical provision of streets and utilities, and to preserve the natural and scenic qualities of open lands. The conditions hereinabove referred to are as follows * * *

"(d) In the event that the application of this procedure results in a plat showing lands available for park, recreation, open space, or other municipal purposes directly related to the plat, then the planning board as a condition of plat approval may establish such conditions on the ownership, use, and maintenance of such lands as it deems necessary to assure the preservation of such lands for their intended purposes. The town board may require that such conditions shall be approved by the town board before the plat may be approved for filing."

ning board meetings and on February 11, 1980, upon submission of a revised scheme, the planning board requested the town board to grant it authority to employ clustering for this new proposal of eight half-acre lots. This authority, to modify applicable provisions of the town zoning ordinance, simultaneously with its approval of a subdivision plat, was granted to the planning board on February 19, 1980.[2]

On April 14, 1980, petitioner submitted a draft environmental impact statement (DEIS) pursuant to ECL article 8, commonly known as the State Environmental Quality Review Act. After giving legal notice, a public hearing was held on the preliminary plat approval application for eight half-acre, single-family residential lots and 4.5 acres of "open space", and on petitioner's application for a wetlands permit pursuant to the Wetlands and Drainage Law of the Town of Yorktown. Petitioner alleges that at the hearing he presented evidence that (1) the proposed development would be in conformity with town land development regulations and sections 276, 277 and 281 of the Town Law; (2) the proposed development would be less dense than the maximum permitted by the zoning ordinance; (3) all drainage problems affecting the site would be resolved; (4) he would preserve as many trees on the property as possible; (5) he would reserve 10% of the property as "open space" for recreational purposes or in lieu thereof pay a sum of money to the planning board for such purposes; and (6) such open space would remain in its natural state. To assure the latter, said land would be deeded to a homeowner's association with restrictive covenants limiting its use; or dedicated to the Town of Yorktown, but not available to the public; or created as part of a park district limited in its use to prospective residents of the proposed subdivision.

---

2. Section A96 of the Town of Yorktown Code, entitled "Clustering Standards", allows the planning board to approve a cluster development under specific standards and conditions. This ordinance does not apply to petitioner's subdivision since, by its terms, it is applicable to subdivisions of 20 acres or more. However, section 281 of the Town Law has general application to property of all sizes and empowers a town board to authorize a planning board, in conjunction with plat approval, to alter the existing zoning regulations to accomplish cluster development of a property.

The town conservation board recommended approval of the site plan and wetlands permit subject to the mitigating provisions of the DEIS and any requirements imposed by the Town Engineer. Before the planning board reached a decision, petitioner submitted a petition signed by 34 area residents opposing dedication to the town of the "open space" area of 4.5 acres on the ground that said area was then a gathering place for teen-agers engaged in activities disruptive of the surrounding neighborhood and such activities would be perpetuated by dedication to the town of the "open space" for public purposes.[3]

By resolution dated July 21, 1980, the board granted preliminary approval to petitioner's proposed plat, subject to the condition that 4.5 acres designated "open space" be deeded to the town. The resolution also determined that the petitioner's DEIS was complete and accurate and granted petitioner a wetlands permit. The condition read:

"Modify said layout to show the following:

"A) The total open space shown on the map shall be indicated as a Conservation Area to be deeded to the Town of Yorktown for purposes of conservation, flood plain control and open green space preservation and a note shall be added to the map as follows:

" 'The natural resources of the area within the CONSER-VATION AREA shall remain undisturbed. Except as may be required for conservation purposes, upon the approval of the Planning Board, the contours thereof shall not be altered; no top soil or underlying soil shall be excavated therefrom; nothing shall be permitted to occur on this area which would contribute to the erosion of the land; and no trees shall be cut or removed and no other plant or vegetation shall be destroyed or removed.' "

---

**3.** The petition read:

"I am opposed to the Town of Yorktown taking the Brookside Village Open Space Land in dedication, and off the Taxrolls. This Open Space Land should remain in the hands of the individual Homeowners, for them to maintain and pay taxes on it.

"If this property is taken off the taxrolls the local neighbors who are most annoyed by the teenagers who gather there to drink beer, smoke pot and vandalize their private property, will in fact be subsidizing a condition that will only worsen when this property becomes public land. On the other hand, if this property is kept in private ownership, the homeowners will do a far better job policing and maintaining their property while paying taxes on it."

In the article 78 proceeding, petitioner alleged that this condition was arbitrary, capricious, illegal, confiscatory and in excess of the planning board's powers under the enabling statute because it prohibited him from developing 40% of his parcel and compelled him to dedicate to the town that private land area for public use. Petitioner also alleged that the condition was an unlawful taking without compensation.

Special Term stated that the issue presented was not whether the condition of dedication was arbitrarily imposed, but whether the planning board acted in excess of the authority granted it by statute.[4] It held that no provisions of the Yorktown Code or any other local law or regulation required a dedication to the town of open space as a condition of granting subdivision approval. Further, the court found no provision of the enabling statutes which would permit the imposition of such a condition. It declined to review the board's finding that the entire 4.5-acre parcel was subject to flooding, and in dicta noted that such finding had a rational basis and that a valid *quid pro quo* for allowing cluster development is the preservation of open space. The court expressly limited its decision to a holding that "the preservation of open space may not be accomplished by a required dedication or deeding of the land to the Town."

### THE ENABLING ACTS

A town planning board may only act within the parameters of the enabling statutes (see *Nemeroff Realty Corp. v Kerr,* 38 AD2d 437, affd 32 NY2d 873). Petitioner cites three enabling statutes, sections 277,[5] 278[6] and

---

**4.** We agree with the issue as framed by Special Term (cf. *Holmes v Planning Bd. of Town of New Castle,* 78 AD2d 1).

**5.** Subdivision 1 of section 277 of the Town Law provides, in pertinent part: "1. Before the approval by the planning board of a plat showing lots, blocks or sites, with or without streets or highways, or the approval of a plat already filed in the office of the clerk of the county wherein such plat is situated if such plat is entirely or partially undeveloped, such plat shall also show in proper cases and when required by the planning board, a park or parks suitably located for playground or other recreational purposes. If the planning board determines that a suitable park or parks of adequate size can not be properly located in any such plat or is otherwise not practical, the board may require as a condition to approval of any such plat a payment to the town of a sum to be determined by the town board, which sum shall constitute a trust fund to be used by the town exclusively for neighborhood park, playground or recreation purposes including the acquisition of property."

**6.** Subdivision 1 of section 278 of the Town Law provides, in pertinent part: "The owner of the land, or his agent who files the plat, may add as part of the plat a notation, if

281[7] of the Town Law, contending none authorizes the condition here imposed.

By a comparison of these related sections, our understanding of section 281, the statute under review, will be aided and perspective will be gained. Section 277 of the Town Law does not, by its terms, provide that a municipality may condition approval of a subdivision plat on the dedication of parkland to the municipality. The municipality may require a plat to show a reservation of such land or may condition plat approval on payment to the municipality of a sum of money to be used for park purposes. The appellant planning board contends that the provision of section 277 allowing this condition of payment necessarily implies the power to compel the direct dedication of parkland. Petitioner contends, however, that section 278, insofar as it relates to section 277, clearly indicates that the landowner is given the *option* of dedication, but cannot be compelled to do so; and, that if section 277 impliedly allowed the town to exact a condition of mandatory dedication, section 278 would be rendered superfluous and a nullity.

In *Jenad, Inc. v Village of Scarsdale* (18 NY2d 78), the Court of Appeals upheld statutory provisions similar to those of section 277 of the Town Law which empowered the local planning board to impose as a condition for subdivision plat approval that the developer either (1) allot some land within the subdivision for park purposes or (2) pay the locality a monetary fee in lieu of such allotment. That case, however, does not aid in the analysis of whether a condition that parkland actually be dedicated, rather than merely set aside, falls within the grant of authority of section 277 to planning boards.

---

he so desires, to the effect that no offer of dedication of such streets, highways or parks, or any of them, is made to the public. If the owner of the land or his agent who files the plat does not add as part of the plat a notation to the effect that no offer of dedication of such street, highways or parks, or any of them, is made to the public, the filing of the plat in the office of the county clerk or register shall constitute a continuing offer of dedication of the streets, highways or parks, or any of them, to the public and said offer of dedication may be accepted by the Town Board at any time prior to revocation of said offer by the owner of the land or his agent."

7. See n 1.

In *East Neck Estates v Luchsinger* (61 Misc 2d 619), the respondent planning board conditioned approval of the petitioner's shorefront subdivision plat on its dedicating a strip 80 feet wide across the entire ocean frontage. The strip, plus the 340 feet lying directly south of it, was unsuitable for home construction. Special Term held that subdivision 1 of section 277 does not give a town planning board the power to require a subdivider to dedicate land for park purposes (see, also, *Matter of Lake Secor Dev. Co. v Ruge,* 141 Misc 913, 915, affd 235 App Div 627; 1 Anderson, New York Zoning Law and Practice [2d ed], §§ 15.18, 15.19). We concur and hold that sections 277 and 278 of the Town Law *do not* authorize a planning board to condition cluster subdivision plat approval on the developer's dedication of open space lands to the town.

Section 281 of the Town Law is the enabling legislation for cluster zoning.[8] It was designed to offer flexibility in the planning of residential developments with the laudable legislative objective of preserving open space and promoting the general welfare while encouraging economy for the developer in the construction of streets and the installation of utilities. Cluster zoning (or "density zoning" as it is sometimes termed) was adopted in New York by legislation in 1927, but the technique was not widely employed until the 1960's. With the subdivision of large residential parcels, the need for a broader concept of development than the traditional single lot-by-lot Euclidean approach became apparent (1 Anderson, New York Zoning Law and Practice [2d ed], § 15.09 *et seq.;* 2 Anderson, American Law of Zoning [2d ed], §§ 11.01-11.02; see, generally, Krasnowiecki, Planned Unit Development: A Challenge to Established Theory and Practice of Land Use Control, 114 U Pa L Rev 47; 4 Rathkopf, The Law of Zoning and Planning [4th ed], § 6, p 71-43).

Section 281 of the Town Law authorizes the town legislative body to delegate to its planning board limited power to permit deviation from the zoning regulations, such as allowing a building to be erected on a lot which does not

8. See n 1.

comply with the area or frontage regulations, or the set-back or sideyard requirements. The planning board, however, cannot permit a modification which will change the use restrictions of the ordinance by allowing a business use in a residential district (Town Law, § 281, subd [g]; *Shapiro v Town of Oyster Bay*, 27 Misc 2d 844), nor does such authority include the power to relieve hardship by waiving zoning restrictions (*Matter of McEnroe v Planning Bd. of Town of Clinton*, 61 Misc 2d 937). And, the power to modify the zoning ordinance cannot result in more building plots or dwelling units than the applicable provisions of the ordinance would permit if the land were subdivided into lots conforming to the minimum lot size and density requirements for the district or districts in which the land is situated (Town Law, § 281, subd [b]).[9] In other words, the total density of the subdivision is maintained by clustering the building units, and the requirement of open space to serve recreational, conservation and public service purposes preserves the natural and scenic resources.

This requirement of common open space is probably the single most outstanding feature of cluster zoning. Consequently, it has raised a myriad of thorny legal problems, such as, how the common facilities are to be maintained and how they are to be assessed. These problems must be resolved by the developer and the planning board at the initial stages of the application. Critical to these determinations is the selection of a plan for the ownership of the common open space, which may be either public or private.

Although subdivision (d) of section 281 delegates to the planning board, as to open space, the authority to impose as a "condition of plat approval * * * such conditions on the ownership, use, and maintenance of such lands as it deems necessary to assure the preservation of such lands for their intended purposes", Special Term held that this statutory authorization did not empower the board to man-

**9.** See *Matter of Rouse v O'Connell* (78 Misc 2d 82) for a detailed discussion of the historical development of section 281 of the Town Law (see, also, Krasnowiecki, Planned Unit Development: A Challenge to Established Theory and Practice of Land Use Control, 114 U Pa L Rev 47, 48).

date dedication of 4.5 acres of petitioner's subdivision to the town.

We disagree. The court's narrow construction flies in the face of the language and history of the statute. The plain intent of the statute is to insure that the subdivision will be provided with open space for conservation, recreational or public purposes either by dedication for public use or by private ownership.

To assist us in our determination, the background arguments for public versus private ownership of the open lands are meaningful. Once the open area has been reserved and set aside in the subdivision, the crucial question for the municipality is how permanent maintenance can best be assured for the benefit of the general community and that of the subdivision residents themselves. One of the most articulated fears of local municipalities over common open space areas is that a lack of proper control or maintenance will result in deterioration of that area to the detriment of the entire municipality. There is also concern that it may later be built upon, thus increasing the density of the tract (4 Rathkopf, The Law of Zoning and Planning [4th ed, 1981 Supp], § 6, p 71-43). Several solutions have been proposed and adopted depending upon the circumstances appropriate to the particular subdivision (Craig, Planned Unit Development as Seen From City Hall, 114 U Pa L Rev 127, 134-135; 4 Rathkopf, The Law of Zoning and Planning [4th ed, 1981 Supp], § 6, p 71-43):

A. The municipality can take control of the open space by mandating dedication to it as a condition for approval of the cluster subdivision.

B. The open space can be made the contractual responsibility of all the subdivision residents; or, the same result can be achieved by way of a tenancy in common of the area.

C. A special private entity, such as a homeowner's association, can take the responsibility for the open space; or, title can be conveyed to trustees who hold for the benefit of the homeowners in the subdivision.[10]

10. See 4 Rathkopf, The Law of Zoning and Planning (4th ed, 1981 Supp), § 6, p 71-43, n 17.5, citing *Cozart v Green Trails Mgt. Corp.*, 501 SW2d 184 (Mo App), where title was

### D. The developer can remain responsible.

Each of these proposals has its own distinct advantages or disadvantages. What is best for a particular subdivision must be determined on an *ad hoc* basis, taking into consideration such factors as the size of the subdivision, the nature of the proposed use of the open space for recreation, conservation or scenic purposes, the location of the common open space and the privacy to be accorded.

Our inquiry then becomes what is meant within the framework of the statute by the key words which authorize reasonable conditions "on * * * ownership".

The argument is made that by public ownership, through dedication or conveyance, both the public and the home owners in the subdivision are benefited by the permanent maintenance accorded the area by public taxes and supervision. If the subdivision is large, a park improvement district may be created with special assessment powers at the expense of the district (Town Law, § 190 *et seq.*). But such municipal maintenance requires that the area must be available to the general public. The open space cannot be dedicated to the municipality while simultaneously being restricted to use by subdivision residents only, which is one of the proposals made herein by the subject developer. As the Court of Appeals stated in *Atlantic Beach Prop. Owners' Assn. v Town of Hempstead* (3 NY2d 434, 440), where the deed of dedication to the town for park purposes covenanted that the area could be used only by residents of the subdivision, "the use must be public, and a use is not public where public benefit is incidental to a private benefit". The drawback to public ownership is, of course, that public use may result in depreciation of the subdivision property values by a loss of privacy for its residents and surrounding neighbors; that it will generate noise and traffic and attract unwelcome congregants, requiring constant policing; and that valuable property will be taken off the tax rolls.[11]

---

conveyed by the developer to trustees under an indenture of restrictions imposed thereon given to the municipality. After 30 years, title was to vest in the owners of all lots as tenants in common.

11. See n 3, petition of neighboring property owners raising these objections to public ownership; see, also, Hanke, Planned Unit Development and Land Use Intensity, 114 U Pa L Rev 15, 19.

A homeowner's association for maintenance of the open space is considered by many cluster development proponents as a desirable alternative. Such an association is usually an incorporated, nonprofit organization to which title has been transferred by the developer for maintenance and management purposes. Each resident owner of the subdivision is automatically a member by virtue of his title, and each individually owned parcel is automatically subject to a charge for a proportionate share of the expenses for the association's activities and common property maintenance. The benefits accruing to the subdivision are more efficient and experienced management, direct responsibility to the ownership, and the maintenance of high standards to increase the value and marketability of the homes. Certain disadvantages, however, are also apparent. Private covenants and agreements may define the rights and duties of the cluster development residents, but the correlative rights of the local municipality, where the association maintains the open space, are not always as clearly defined. Municipalities are concerned that the resident owners may allow the open space to deteriorate to the detriment of the public at large. Authority must thus be provided to compel the private association to perform its responsibility to the subdivision as well as to the community, with the right reserved to the municipality, upon failure to perform, to assume such maintenance. The cost of the latter would be chargeable to the subdivision residents after notice and hearing. Under these circumstances the use would still be limited to the residents and not the public (see Babcock, Krasnowiecki and McBride, The Model State Statute, 114 U Pa L Rev 140).

These legal concepts of public and private ownership of open space, and the benefits and disadvantages of the respective alternatives, were apparently considered by the Town of Yorktown in its "Land Development Regulations". While these regulations do not control this subdivision since it is less than 20 acres, it is noteworthy that the "Clustering Standards" (Code of Town of Yorktown, §§ A96-1-A96-6), provide, at the option of the town, for the acceptance of a dedication for recreational purposes; or,

where the space is reserved for use by the residents, for maintenance thereof by a neighborhood association formed for that purpose. Likewise, the planning board is authorized to require "such conditions as are deemed necessary to preserve and protect the open spaces therein" (§ A96-6, subd F). The regulations also provide that to preserve all natural features such as trees, groves, lakes, marshes, ponds and the wetlands as at bar, these features shall be "protected and preserved by appropriate covenants, easements and/or *dedication* to the town or similar body" (§ 58-19; emphasis added). While it is true that the town board, in enacting these Land Development Regulations, could only delegate to the planning board such authority as was delegated to it by the enabling statute, section 281 of the Town Law, it is obvious that the town board construed its authority under that statute as empowering it to condition a cluster development on public or private ownership of the common space, leaving to the planning board the authority to determine which ownership alternative was appropriate to the particular subdivision.

It is a reasonable assumption that the Legislature in 1963, by amending section 281 and completely recasting its provisions, including the grant of authority by a town board to its planning board to impose reasonable conditions "on * * * ownership", was fully cognizant of these respective contentions supporting public or private ownership of common open space in cluster developments. The historical progression of cluster zoning in this State since its initial introduction in 1927 evidenced a need for clarification of the powers of planning boards in the conformation of existing planning law to modern planning needs.

As early as 1925, Bassett and Williams, prominent planners, prepared a model planning law which included in section 12 a provision for planned unit residential development (Krasnowiecki, Planned Unit Development: A Challenge to Established Theory and Practice of Land Use Control, 114 U Pa L Rev 47, 48, 81). This section 12 was then enacted in New York as section 281 of the Town Law. In 1961, section 281 received its first court test in *Matter of Hiscox v Levine* (31 Misc 2d 151). As originally drafted,

section 281 provided that the planning board, by ordinance of the town board, was empowered to make "any reasonable change" in the zoning regulations of the town, upon approval of a subdivision plat. This quoted phrase led to a great deal of confusion as to the precise extent of this power. In *Hiscox,* the developer proposed to cluster single-family detached homes on lots of one-half acre, rather than on lots of one acre as the zoning required. He also proposed to dedicate the balance of the tract for a public park. The planning board approved the plat and the deed of dedication. The proposal was challenged by neighbors. The court held (p 154) that the action of the board allowing reductions in the prescribed lot size "encroaches on the legislative authority to make zoning changes (Town Law, § 265), [and so] it cannot be upheld." The court also held that the area set aside or dedicated for a park could not be counted under section 281 in computing the average density to be maintained on the balance of the tract.

The 1963 amendment was designed, therefore, to end this confusion by specifying the powers which may, in fact, be delegated to the planning board. The amendment of section 281 did not empower the town boards to authorize their subordinate planning boards to "change" zoning regulations, but provided that such planning boards were authorized to "modify" existing zoning regulations "subject to the conditions hereinafter set forth and such other reasonable conditions as the town board may in its discretion add thereto", the authorization being for the purpose "to enable and encourage flexibility of design and development of land * * * and to preserve the natural and scenic qualities of open lands."

In furtherance of this purpose, subdivision (d), germane to our inquiry, provided that if a plat showed available land for "park, recreation, open space, or other municipal purposes", then the planning board "as a condition of plat approval may establish such conditions *on the ownership, use, and maintenance* of such lands as it deems necessary to assure the preservation of such lands for their intended purposes" (emphasis added). It is significant that the statute expressly refers to "ownership, use, and maintenance",

the very problems hereinbefore discussed, inherent in clustering which result from the statutory requirement of common open space. No more explicit elucidation of these words by statutory definition was necessary. The meaning of these words and the significance of the amendment, by virtue of past experience with the statute, was recognized by various public officials and agencies in their recommendations of approval of the legislative bill submitted to the Governor (see Legislative bill jacket, L 1963, ch 963, Assembly Intro. 1532, Print 4949, by Mr. Mead).

The Association of Towns was the only public organization to object to the amendment of section 281. The association believed that the language of the delegation was too broad; and, as to subdivision (d), inquired whether "it is being suggested that the planning board would require the owner to transfer ownership to some other individual or to the municipality or what not" (letter from Association of Towns, William K. Sanford, Executive Secretary, to his Excellency Nelson A. Rockefeller, April 16, 1963). Despite the fact that the association focused its objection specifically on the very issue *sub judice,* the bill was not further clarified by the Legislature, and, notwithstanding the association's objection, the bill was signed by the Governor as submitted. Apparently, both the Legislature and the Governor considered the language and intent clear and explicit and approved it.

It is a general rule of statutory construction that words of a statute will be interpreted in their ordinary acceptation and significance with the meaning commonly attributed to them. And, words having a precise and well-settled meaning in jurisprudence are to be understood in the same sense when used in a statute, unless a different meaning is unmistakably intended (56 NY Jur, Statutes, § 131).

Both in common parlance and legal acceptation, the word "ownership" varies in its significance according to the context and the subject matter to which it is applied. When used in a statute, the obvious nature and purpose of the statute, and the end to be accomplished, may indicate its meaning. However, "ownership" does not always mean absolute ownership, but covers different estates or inter-

ests in property: absolute, conditional or qualified; legal or equitable; present or future; vested or contingent. It thus includes any estate, interest or easement in real property, whether acquired by conveyance, dedication, covenant or otherwise. Furthermore, the ownership of property may be public or private (73 CJS, Property, § 13 [b], pp 184-185; 63 Am Jur 2d, Property, § 32, p 316; Who is "Owner" of Real Property, Ann., 95 ALR 1085; 3A Warren's Weed, New York Real Property [4th ed], Owner, § 1.02; 47 NY Jur, Property, § 12, p 301).

Section 281 of the Town Law is a remedial statute as its historical development demonstrates and "is consonant with progressive legislative policy toward the increase of specifically delegated prerogatives in the area of subdivision control" (*Delaware Midland Corp. v Incorporated Vil. of Westhampton Beach,* 79 Misc 2d 438, 441, affd 48 AD2d 681, affd 39 NY2d 1029). The term "ownership" therein, being a general and not a technical concept, should, especially when used in such a remedial statute, be liberally and broadly construed, "in aid of the object sought by the legislature and with a view to the beneficial ends proposed" (56 NY Jur, Statutes, § 228, p 683; Who is "Owner" of Real Property, Ann., 95 ALR 1085).

Contrariwise, it may be argued that such a liberal construction is improper, and a strict construction should be applied since the subdivision plat herein is conditioned upon a public dedication of the open space in derogation of the developer's property rights. However, the strict construction rule is inapplicable under the circumstances at bar. That rule is applied where a statute regulates or restrains the use or disposition of property or divests title against the owner's will (56 NY Jur, Statutes, § 226, p 681). Here, there is no element of compulsion or restraint. It is entirely optional for the developer to utilize the cluster technique with its concomitant savings in construction costs by accepting the condition of dedication; or, he may refuse the opportunity and conventionally develop the parcel (cf. *Chrinko v South Brunswick Twp. Planning Bd.,* 77 NJ Super 594, 601-602). Either way, he is limited to the same number of dwellings.

For those reasons we reject the contention that the statutory authority granted by section 281 of the Town Law to impose "conditions on * * * ownership", does not empower the planning board herein to condition such clustering approval on the mandated dedication of 4.5 acres of common open space.

While subdivision (d) of section 281 does not speak in terms of "dedication", as does subdivision 1 of section 278, the broad concept of the word "ownership" includes "dedication" without further specification. Although it may be argued that the Legislature, having advisedly used the word "dedication" in subdivision 1 of section 278, would likewise have used that legal terminology in subdivision (d) of section 281 if it meant to confer such power upon planning boards, it may just as persuasively be argued that the Legislature deliberately omitted the word "dedication" to allow local planning boards broad and flexible powers to impose conditions within the full scope and contemplation of the general concept of "ownership". Therefore, we do not read the power to impose "conditions on * * * ownership" as in any way precluding imposition of a condition of dedication of land to a town if it advances the legislative purpose of securing common open space and promoting the general welfare. Such conditions have met with approval in other States, even when implemented under the general zoning powers, without the benefit of a specific enabling statute such as section 281 of the Town Law (see *Chrinko v South Brunswick Twp. Planning Bd., supra*), or pursuant to an enabling statute authorizing municipalities to impose " 'other surveying, monumenting, mapping and approving requirements for such division' " (*Jordan v Village of Menomonee Falls,* 28 Wis 2d 608, 616, app dsmd 385 US 4). We believe our own more specific enabling statute also deserves a liberal interpretation and that it authorizes the imposition of a dedication condition on cluster subdivision plat approval.

Additionally, the fundamental distinction between the nature and objectives of a subdivision pursuant to sections 277 and 278 of the Town Law and a cluster development under section 281, accounts for the difference in the word-

ing of the respective statutes. Sections 277 and 278 relate to a conventional subdivision on a lot-by-lot basis. Under section 277 only in "proper cases" is approval conditioned upon a subdivision map showing "a park or parks suitably located for playground or other recreational purposes." And, "[i]f the planning board determines that a suitable park or parks of adequate size cannot be properly located in any such plat or is otherwise not practical", then the "board may require as a condition to approval of any such plat a payment to the town of a sum to be determined by the town board". (Town Law, § 277, subd 1.) Thus, if the tract is too small for the subdivision to make allowances for open park spaces therein, or if there is no present need for such space in the town, the town can exact such payment in lieu of such allotment, which "sum shall constitute a trust fund to be used by the town exclusively for neighborhood park, playground or recreation purposes including the acquisition of property" (Town Law, § 277, subd 1) when the future public need therefor arises (see *Jenad, Inc. v Village of Scarsdale,* 18 NY2d 78, *supra*). Section 278, implementing section 277, provides the procedure for a dedication or reservation of open park space by a developer if such space is available and the planning board is not exacting payment in lieu of such allotment.

In contradistinction, the essence and concept of cluster development under section 281 is that common open space must be set aside "to preserve the natural and scenic qualities of open lands." By clustering the dwellings, the remaining portion of the tract is available for such purposes without altering existing density requirements of the zoning ordinance. Unlike subdivision approval under sections 277 and 278, the tract itself must provide such common open space as a condition of clustering approval and there is no discretion on the part of the planning board to allow payment of money in lieu of setting aside open space. By drafting the statute to mandate conditions "on * * * ownership, use, and maintenance", the Legislature was careful to insert precise terminology designed primarily to address the problems which have arisen in cluster developments. Section 281, therefore, reflects a legislative

judgment that such conditions will benefit both the residents thereof, and the community at large, leaving to the planning board the responsibility of balancing the public and private interests involved in the preservation of the common open space.

### CONSTITUTIONALITY

Even though authorized by the enabling statute (Town Law, § 281, subd [d]), the requirement of dedication of open space lands to the town as a condition of cluster zoning development must not amount to an unconstitutional taking without compensation. A restriction on land use purported to be an exercise of the police power must meet two criteria: (1) it must be reasonably related to a salutary purpose to be effected; and (2) it must not deprive the property owner of all beneficial use of his property (see *Salamar Bldrs. Corp. v Tuttle,* 29 NY2d 221, 225-226). The burden is on the municipality to show a rational relationship between the restriction and achievement of the beneficial purpose. However, as with any exercise of the police power, that burden is not an onerous one. The restriction need not be the best way to achieve the salutary purpose; it need only be rationally related to the achievement of such purpose (*Salamar Bldrs. Corp. v Tuttle, supra,* p 225). The evidence before the planning board established that the area sought by it for dedication was environmentally sensitive. Its conclusion, to protect the area by holding the town responsible for its upkeep, was not irrational even though petitioner and neighboring property owners did not agree with this decision. If, in the opinion of the planning board, the subdivision created the specific need for such dedication for conservation and open space purposes, then it cannot be said that it was unreasonable to charge the subdivider with the burden of providing such area.

Once the municipality shows that the restriction is rationally related to a salutary purpose, the burden shifts to the landowner to demonstrate that it would deprive him of all beneficial use of the land (*Salamar Bldrs. Corp. v Tuttle, supra,* p 226). A mere allegation of diminution in value, even if believed, is insufficient (*supra,* at pp 227-228). The landowner's burden is extremely heavy. He must demonstrate that under no permissible use would the

parcel as a whole be capable of producing a reasonable return or be adaptable to other suitable private use. "Only when the evidence shows that the economic value, or all but a bare residue of the value, of the parcel has been destroyed has a 'taking' been established" (*Spears v Berle,* 48 NY2d 254, 263).

Petitioner at bar has alleged only conclusorily a diminution in the value of his parcel if the dedication is required. This is clearly not enough to shift the burden back to the municipality to rebut his evidence or otherwise justify imposition of the condition (see *Spears v Berle, supra,* p 263). We also note that the Supreme Court of the State of Wisconsin has held the imposition of a condition identical to the one before us to be a valid exercise of the police power (see *Jordan v Village of Menomonee Falls,* 28 Wis 2d 608, *supra,* cited in *Jenad, Inc. v Village of Scarsdale,* 18 NY2d 78, 85, *supra*).

Finally, it is important to reiterate that under section 281 of the Town Law, cluster development is an option of which the developer decides to avail himself. If petitioner believes the mandated condition requiring dedication of a substantial portion of his property is too onerous, he may reject the option and develop his land conventionally as of right (cf. *Chrinko v South Brunswick Twp. Planning Bd.,* 77 NJ Super 594, 601-602, *supra*). Here, whether the petitioner develops his homes conventionally on single plots, or resorts to cluster development, he may not construct more than eight residences and, therefore, he cannot claim a deprivation of the use of his property (cf. *Matter of Oakwood Co. v Planning Bd. of Town of Huntington,* 89 AD2d 606).

In sum, the condition imposed by the planning board was a valid exercise of the power conferred upon that body by subdivision (d) of section 281 of the Town Law. It did not constitute an unreasonable exercise of the police power resulting in an unconstitutional taking without compensation. Accordingly, the judgment should be reversed, the determination of the planning board confirmed and the petition dismissed, without costs or disbursements.

MOLLEN, P. J., TITONE and WEINSTEIN, JJ., concur.

Judgment of the Supreme Court, Westchester County, entered March 17, 1981, reversed, on the law, without costs or disbursements, determination confirmed and proceeding dismissed on the merits.