In the Matter of Rosanne M. Cahn, as Executrix of Herbert Cahn, Deceased, et al., Appellants, v Planning Board of the Town of Gardiner, Respondent, and Luna Estates et al., Intervenors-Respondents.

Third Department, May 17, 1990

APPEARANCES OF COUNSEL

*Oliver & Oliver (Lewis B. Oliver, Jr., of counsel), for appellants.*

*Kellar & Kellar (Paul T. Kellar of counsel), for respondent.*

*Jacobowitz & Gubits (Larry Wolinsky of counsel), for intervenors-respondents.*

### OPINION OF THE COURT

YESAWICH, JR., J.

In the fall of 1988, respondent conditionally approved the preliminary subdivision plats for Luna Estates and Greenvale Partners, neighboring subdivisions in the Town of Gardiner, Ulster County. Respondent had previously classified Luna Estates, an 80-acre parcel upon which 28 residential units were to be built, as a Type I action under the State Environmental Quality Review Act (ECL art 8) (hereinafter SEQRA) due to its proximity to a national register historic home. Representatives of Luna Estates and respondent met to discuss environmental matters, specifically traffic, visual and drainage impacts, and soil compatibility. After holding public hearings, respondent determined that the proposed action might significantly impact the environment and therefore had Luna Estates prepare a draft environmental impact statement (hereinafter EIS). The draft EIS was submitted in late May 1988. Thereafter, respondent directed Luna Estates to address in the final EIS some of the additional concerns raised by the

public during the second set of hearings. A completed final EIS was submitted in September 1988. Respondent reviewed this statement and a negative SEQRA report that had been prepared by its own planning consultant. Following the review, respondent conditionally approved Luna Estates' preliminary plat subject to its implementation of mitigation measures which had been identified in the final EIS.

During this review process, respondent also concurrently considered a subdivision plan for Greenvale Partners, which abuts Luna Estates. Greenvale's developers proposed to construct 31 residential units upon a 112-acre parcel of land. Upon initial review, respondent identified concerns regarding drainage, wetlands, traffic congestion and lot and road design. With respect to this project, respondent's planning consultant noted that a second and required point of access to the Greenvale subdivision would be by way of a proposed road running through Luna Estates and that the alignment of this latter connection was unsatisfactory. As required by respondent, Greenvale submitted a revised sketch plan which addressed these various concerns. Thereafter, respondent recommended that a traffic assessment study be completed to supplement Greenvale's previously submitted environmental assessment form, classified the action as unlisted and granted conditional approval pending public hearings. After these hearings, respondent issued a negative declaration conditioned upon implementation of particularized mitigation measures. A 30-day public comment period followed, after which respondent granted Greenvale conditional preliminary subdivision plat approval.

Thereafter, petitioners, Rosanne M. Cahn, as executrix of the estate of Herbert Cahn, the owner of the Hendrikus Dubois House, and AFFIRM, an association which monitors rural development in the Town of Gardiner, commenced the instant litigation to have the plat approvals for Luna Estates and Greenvale declared null and void for a variety of reasons, namely, because respondent: failed to take a hard look at the environmental impact of Luna Estates; failed to issue a cumulative EIS; neglected to classify the Greenvale project as a Type I action; ignored the town's municipal code by illegally approving construction of an impermissibly long dead-end street; and approved the projects despite claimed conflicts of interest on the part of two of respondent's members. Supreme Court credited none of these, and dismissed the petition. Petitioners appeal. We find that respondent's decision to ap-

prove both subdivisions was made in accordance with lawful procedure and was neither affected by error of law nor arbitrary, capricious or an abuse of discretion *(see, Akpan v Koch,* 75 NY2d 561, 574), and accordingly affirm.

The record belies petitioners' first contention, that respondent failed to take a hard look at the potential impact of Luna Estates on the neighboring historic Hendrikus Dubois House, which is located on a 52-acre parcel adjacent to and north of the Luna Estates property. Only the house and one acre surrounding it have been placed in the State and National Register of Historic Places. Respondent weighed drainage, traffic congestion and visual impact concerns relating to the Dubois home. Concluding that the 50-acre buffer zone would adequately alleviate all but the drainage problems, respondent determined that the EIS need only speak to this latter issue. Eventually respondent incorporated into the final EIS, as an identified mitigation measure, a plan designed to direct drainage away from the Dubois house. That Luna Estates' draft EIS and final EIS failed to address all the potential adverse environmental impacts of the subdivision on the historic site is of no consequence. Once respondent found that an EIS was essential, the EIS had to deal only with "those specific adverse or beneficial environmental impacts * * * reasonably anticipated and/or * * * identified in the scoping process" (6 NYCRR 617.14 [c]). An EIS need not be encyclopedic, nor must it exhaustively analyze every possible environmental impact (6 NYCRR 617.14 [b]). Accordingly, because respondent subjected the Luna Estates project to a hard look, identified drainage as the only potentially adverse environmental impact on the Dubois house and had the EIS address that concern, the SEQRA regulations were fully satisfied.

■ Nor do we find respondent's failure to require a cumulative EIS violative of SEQRA. Petitioners claim that Luna Estates and Greenvale, though separately owned and acquired from different owners at different times, are "related actions" necessitating a cumulative EIS. The basis for this assertion is that the two subdivisions are geographically contiguous, share a connecting road (insisted upon by respondent), were planned by the same engineer, employed the same law firm and were simultaneously scrutinized by respondent. We are not necessarily persuaded that these two projects are indeed related actions, for no long-range area or community-wide plan appears to be involved and there is no showing that these subdivisions are integrated, dependent upon each other and

devoid of independent utility *(cf., Matter of Village of Westbury v Department of Transp.,* 75 NY2d 62, 69; *Matter of Save the Pine Bush v City of Albany,* 70 NY2d 193, 205-206; *Chinese Staff & Workers Assn. v City of New York,* 68 NY2d 359, 367). But even assuming that they are related actions, respondent's obligation was to consider the cumulative environmental impact of these actions (6 NYCRR 617.11 [b]) and include in any EIS those impacts that respondent considered likely to have a significant effect on the environment (6 NYCRR 617.14 [c], [f] [3]). This is exactly what respondent did. The record indicates that respondent reviewed many cumulative impacts of the proposed subdivisions, e.g., wetlands, soil erosion, groundwater pollution, potential for flooding and destruction of bird habitats, and required of Luna Estates that its draft EIS and final EIS specifically deal with two of these, traffic and visual impacts.

■ As the cumulative impacts of the proposed subdivisions which respondent found to be significant were given bona fide consideration, a cumulative EIS was not necessary. And since neither subdivision contains greater than 50 lots, petitioners' corollary claim that a central water and sewer system to serve these subdivisions is mandated, is meritless. The town's code does not dictate any such result *(see,* Municipal Code of Town of Gardiner § 31.46 [F]). Beyond that, it is notable that respondent has concluded, and there is ample justification in the record for it to do so, that one system for both subdivisions is infeasible.

■ Unavailing also is petitioners' argument that respondent should have classified Greenvale as a Type I action. Because the record does not conclusively establish, as petitioners urge, that this subdivision is partially located within a certified agricultural district *(see,* 6 NYCRR 617.12 [b] [8]), respondent was well within its discretion to credit a memorandum from its planning consultant and a letter from the Ulster County Agricultural Committee suggesting otherwise *(see, Matter of Oakwood Co. v Planning Bd.,* 89 AD2d 606, 607). And, as the proposed subdivision contemplates residential construction, 6 NYCRR 617.12 (b) (6) is inapplicable. Petitioners' contention, that respondent must consider the acreage involved in above ground septic fill systems, vegetation removal and paving independently from the land upon which residences will be erected, is similarly unpersuasive *(compare,* 6 NYCRR 617.12 [b] [5], *with* 6 NYCRR 617.12 [b] [6]). In any event, even accepting petitioners' characterization, an EIS is only neces-

sary if the agency determines that the proposed Type I project would have a significant effect on the environment *(see, Matter of Acton v Wallace,* 112 AD2d 581, *affd* 67 NY2d 953); it suffices that here respondent determined that the Greenvale project would have no such effect.

■ Equally unconvincing is petitioners' thesis that a dead-end street in excess of 1,200 feet voids respondent's approval of Luna Estates' subdivision. The town's municipal code provides:

"*Dead-End Streets.*

"Permanent dead-end streets shall *normally* not exceed 1,200 feet in length in order to provide for convenience of traffic movement and facilitate more effective police and fire protection. * * * A T-shaped turnaround shall be installed at the end of a dead-end street. This 'T' should be fifty (50) feet each side of the right-of-way and be the same width as the road (i.e. fifty [50] feet by one hundred fifty [150] feet). Any deviation may be made only by written release from the Town Board, Planning Board and Superintendent of Highways. Such release should accompany the owner's petition." (Municipal Code of Town of Gardiner § 31.42 [E] [emphasis supplied].)

The written release requirement, which was not met in this case, was, according to an uncontroverted affidavit from respondent's planning consultant, intended to apply only to the dimensions of T-shaped turnarounds. In any case, respondent's interpretation of this statutory ambiguity is not so unreasonable or arbitrary as to render it invalid *(see, Matter of Howard v Wyman,* 28 NY2d 434, 438), and especially so in this instance given the uncontradicted evidence that as originally adopted the written release provision was contained in a paragraph separate and distinct from the 1,200-foot length limitation.

■ Lastly, petitioners inveigh against respondent because two of its members, an engineer and an attorney, provided professional services during development of Luna Estates and Greenvale. They maintain that respondent's approval of the subdivisions' plats should therefore be declared null and void. Both parties, however, not only immediately disclosed their interests, but of critical importance, they abstained from any discussion or voting regarding the subdivisions *(cf., Baker v Marley,* 8 NY2d 365, 367; *Matter of Zagoreos v Conklin,* 109 AD2d 281, 286-287; *Matter of Tuxedo Conservation & Taxpayers Assn. v Town Bd.,* 69 AD2d 320, 323). And, while a

municipal officer may not receive compensation for services in relation to any matter before an agency of which he is a member (General Municipal Law § 805-a [1] [c]), or which would create a conflict of interest respecting his official duties (Municipal Code of Town of Gardiner § 4.4 [G]), whether these sections prohibit an officer from accepting employment which might create such problems in the future is less clear *(compare,* 1985 Opns St Comp No. 85-60, at 84, *with* 26 Opns St Comp, 1970, at 150). Nevertheless, we are not convinced that the town engineer's conduct, that of working on Luna Estates and Greenvale's respective subdivision sketch plans prior to their submission to respondent for action, compels us, even if that conduct may subject him to personal reprimand *(see,* General Municipal Law § 805-a [2]; Municipal Code of Town of Gardiner § 4.10; *see, e.g., Matter of Keller v Morgan,* 149 AD2d 801, 802), to invalidate respondent's approval of the plans.

Regarding the claim that respondent was also servilely biased in favor of Luna Estates because the law firm with which the attorney board member was associated had represented Luna Estates in forming a limited partnership in the past, this claim is even more remote and more tenuous than the conflict charge leveled at the town engineer. In short, although there is considerable speculation on petitioners' part, there is no factual support for their allegations that the engineer and attorney members' interests unduly influenced respondent or otherwise tainted the proceedings.

KANE, J. P., WEISS, MIKOLL and LEVINE, JJ., concur.

Judgment affirmed, without costs.