77 N.J. Super. 594 (1963)
187 A.2d 221
FRANK CHRINKO, WILLIAM D. NELSON AND JOSEPH E. RAUCH, PLAINTIFFS,
v.
SOUTH BRUNSWICK TOWNSHIP PLANNING BOARD, AN ENTITY OF SOUTH BRUNSWICK TOWNSHIP CREATED BY LAW; AND THE TOWNSHIP OF SOUTH BRUNSWICK, A CORPORATE MUNICIPALITY IN THE COUNTY OF MIDDLESEX, STATE OF NEW JERSEY, DEFENDANTS.
Superior Court of New Jersey, Law Division.
Decided January 4, 1963.
*597 Mr. Samuel Leventhal, attorney for plaintiffs.
Mr. David M. Greene, attorney for defendants.
FURMAN, J.S.C.
This prerogative writ action contests the validity of two ordinances of South Brunswick Township in Middlesex County permitting cluster or open space zoning. By their terms a subdivision developer may reduce minimum lot sizes by 20% or 30% and minimum frontages by 10% or 20% upon his concurrently deeding 20% or 30% of the subdivided tract for parks, school sites and other public purposes, with the approval of the planning board.
South Brunswick Township is in the western section of Middlesex County abutting Somerset and Mercer Counties. Its land area is over 41 square miles. The New Jersey Turnpike, three main arterial highways and the main line of the Pennsylvania Railroad bisect the township. Once predominantly agricultural, with settled communities at Kingston, Dayton, Monmouth Junction and Deans, South Brunswick has experienced an estimated doubling of its population in the three years between 1957 and 1960 and an onrush of new *598 industry and commercial establishments, particularly along the highways.
Downtown New York and downtown Philadelphia are within a radius of 35 miles, drawn from South Brunswick Township. The urban sprawl from the New York metropolitan area reaches within a few miles of the township on the north and east. Residential developments for the wage earners of Philadelphia, Trenton and vicinity are pushing towards South Brunswick from the south and west. Kendall Park, which was developed recently for one-family housing on lots approximating 13,500 square feet, now holds about 40% of the population of South Brunswick Township in an area slightly over one square mile along the northern boundary.
A similar project, Brunswick Acres, is proposed for a 235-acre tract in the Residential 20 Zone in the northeast corner of the township. This development is intertwined with the legal and factual issues before the court. The plaintiffs contend that the cluster or open space ordinances were enacted for the special benefit of the owner, Yenom Corporation. The defendants' position is that they responded with reasonable legislation, general in effect, to the problem of large subdivision developments without land areas available for schools, recreation areas and green spaces.
Facing multiple housing developments and a population upsurge, the South Brunswick Planning Board authorized a master plan report from a firm of planning consultants in 1960. The master plan report, which recommended balanced growth, was submitted in late 1961. No master plan has been adopted. On the subject of cluster or open space zoning, the master plan report suggested an optional system parallel to that enacted in the zoning ordinances under attack here, but applicable only in zones with a minimum lot size of 45,000 square feet and allowing reductions of minimum lot sizes but not minimum frontages. The planning consultants label this recommended scheme "density zoning," stressing that no more homes can be built in a subdivision despite smaller size *599 lots, because the land thus saved must be deeded to the municipality.
The need for preserving woods and parklands in a natural state, as well as lands adequate for other public purposes, is widely recognized. The voters of this State approved by referendum in 1961 the expenditure of $60,000,000 for the acquisition of so-called "green acres" by the State or political subdivisions. L. 1961, c. 45, N.J.S.A. 13:8A-1 et seq. Technical Bulletin 42 of the Urban Land Institute, published in 1961, endorses density zoning, which it designates as organic zoning for planned residential developments. Other discussions of the various governmental techniques for acquiring or maintaining recreation and park areas are found in Krasnowiecki & Paul, "Preservation of Open Space in Metropolitan Areas," 110 U. Pa. L. Rev. 179 (1961); Comment, "Techniques for Preserving Open Spaces," 75 Harv. L. Rev. 1622 (1962); Comment, "Control of Urban Sprawl or Securing Open Space: Regulation by Condemnation or by Ordinance?" 50 Cal. L. Rev. 483 (1962).
The cluster or open space zoning ordinance of South Brunswick Township was adopted as No. 19-62, an amendment to the zoning ordinance of 1958. Its main pertinent provisions are as follows:
"Section 2. The purpose of this subsection is to provide a method of development of residential land which will nevertheless preserve desirable open spaces, school sites, recreation and park areas and lands for other public purposes.
Section 3. At the discretion of the Planning Board, a subdivider may be allowed to reduce the minimum lot size and dimension requirements in accordance with the provisions of this Ordinance, provided the following conditions are met:
(a) The resulting net lot density of the area to be subdivided shall be no greater than the net lot density of the said area without regard to the provisions of this Ordinance.
(b) All lands within the subdivision other than streets, building lots and private recreational areas shall be deeded to the Township for public purposes simultaneously with the granting of final subdivision approval.
(c) The lands to be deeded for public purposes shall be located, shaped and improved as required by the Planning Board, which shall *600 consider the suitability, physical condition and location of the lands with regard to its proposed uses and to the needs of the Township, in reaching its determination. The Planning Board shall, prior to reaching its determination, cause at least one of its members to confer with the Board of Education, Recreation Commission, Shade Tree Commission, Municipal Utilities Authority, Engineer and other interested municipal agencies as to the potential uses and advisability of accepting the lands offered to be donated.
(d) A portion of the land to be donated for public purposes shall be at least a usable single five acre tract.
(e) With the exception of minimum lot sizes and lot dimension requirements, the subdivision must comply with all other provisions of the Zoning Ordinance, such as front, rear and side setbacks, size of buildings, etc.
(f) There must exist approved plans for public water and public sewer systems which shall be available to all lots in the subdivision prior to the issuance of any Certificates of Occupancy.
(g) A developer may apply to the Planning Board for permission to reduce lot sizes and donate lands to the Township in accordance with this Ordinance at any time prior to applying for final subdivision approval.
Section 4. If the tract to be subdivided is located in a zone which requires a minimum lot size of 20,000 square feet or less, the developer must donate, exclusive of open drainage water courses, 20% of the tract to the Township; if the tract to be subdivided is located in a zone which requires a minimum lot size in excess of 20,000 square feet, the developer must donate, exclusive of open drainage water courses, 30% of the tract to the Township. The area of the tract shall be determined from a certified outline survey submitted by the subdivider.
Section 5. If the minimum lot size requirement of the tract to be subdivided be 20,000 square feet or less, the minimum lot size requirement shall be reduced 20% and the minimum frontage requirement shall be reduced 10%. If the minimum lot size requirement of the tract to be subdivided be in excess of 20,000 square feet, the minimum lot size requirement shall be reduced 30% and the minimum frontage requirement shall be reduced 20%."
A companion zoning ordinance amendment, No. 20-62, also challenged in this litigation, amplifies previous requirements concerning performance guarantees by developers to cover specifically improvements to lands to be deeded to the township for public purposes.
Cluster or density zoning should meet judicial sanction as an implementation of the zoning and planning power to deal with a current and increasing problem, large subdivisions in *601 previously rural communities. The Legislature has vested municipalities with legislative power in the field of zoning and planning pursuant to N.J. Const. Art. IV, § VI, par. 2. By specific delegation from the Legislature in N.J.S.A. 40:55-30 a municipality may:
"* * * regulate and restrict the height, number of stories, and sizes of buildings, and other structures, the percentage of lot that may be occupied, the sizes of yards, courts, and other open spaces, the density of population, and the location and use and extent of use of buildings and structures and land for trade, industry, residence, or other purposes."
Although the state zoning law does not in so many words empower municipalities to provide an option to developers for cluster or density zoning, such an ordinance reasonably advances the legislative purposes of securing open spaces, preventing overcrowding and undue concentration of population, and promoting the general welfare. Nor is it an objection that uniformity of regulation is required within a zoning district. N.J.S.A. 40:55-31. Such a legislative technique accomplishes uniformity because the option is open to all developers within a zoning district, and escapes the vice that it is compulsory. Midtown Properties, Inc. v. Madison Tp., 68 N.J. Super. 197, 210 (Law Div. 1961).
Zoning ordinances in rapidly growing municipalities may be founded on an outmoded concept that houses will be built one at a time for individual owners in accordance with zoning regulations, with latitude for variances in hardship or other exceptional cases, and that the municipality can take steps whenever warranted to acquire school, park and other public sites. Such a gradual and controlled development is not practicable in many municipalities today. Confronted with a subdivision plan for several hundred homes in a tract meeting all water drainage, sanitation and other conditions, a municipality must anticipate school needs but without lands set aside for that purpose; it must anticipate a large population concentration without recreation areas, parks or green spaces, or lands for firehouses or other public purposes. Cluster or *602 density zoning is an attempted solution, dependent, as set up in the South Brunswick zoning ordinance, upon the agreement of the large-scale developer whose specific monetary benefit may be only that he saves on street installation costs.
Other principles favoring cluster or density zoning are the presumption of validity attaching to zoning as well as other legislation, Ward v. Montgomery Tp., 28 N.J. 529, 539 (1959), and the liberal construction to be accorded to the powers of municipal corporations, including those granted by necessary or fair implication or incident to those expressly conferred, under the N.J. Const. Art. IV, § VII, par. 11.
In the pleadings and at the trial of this action the plaintiffs sought to establish that South Brunswick Township enacted the cluster or open space zoning ordinance for the special benefit of Yenom Corporation, not for one or more of the statutory zoning purposes, and without adequate consideration by the planning board.
The Brunswick Acres developer received preliminary approval of a subdivision of 526 lots with a minimum lot size of 13,500 square feet on December 9, 1959. The zoning ordinance at that time authorized minimum lot sizes of 13,500 square feet in the Residential 20 Zone, contingent upon an adequate water supply and sewage system. Otherwise the minimum lot size in the Residential 20 Zone was 20,000 square feet. By amendment in 1960 a minimum lot size of 20,000 square feet was fixed for all properties in the Residential 20 Zone.
Municipal officials were concerned with the prospect of 500 or so families moving into Brunswick Acres at the rate of 200 or 250 a year without adequate school or park sites, in accordance with the preliminary approval which extended for three years. N.J.S.A. 40:55-1.18. The experience stemming from the Kendall Park development had revealed how critical the problem was of rapid expansion in school population. Meetings were held between representatives of the township committee and planning board on one side and of Yenom Corporation on the other side in the late spring of *603 1962. A paramount object of these meetings was to work out terms for final approval of the Brunswick Acres subdivision, with an understanding that houses would be constructed at a rate acceptable to the municipality and that lands for public uses would be made available, in addition to the ten acres to be deeded as a school site under an agreement corollary to the preliminary approval.
Coordination of these objectives with the density control zoning concept of the master plan report was discussed and favored. Yenom Corporation submitted plans for the Brunswick Acres development embodying smaller lot sizes and extensive areas for public lands in July and August. The planning board informally rejected an initial proposal because the public lands were not suitable, apparently because of their location or drainage problems. On August 25, 1962, despite a petition with 500 signatures filed with the planning board by Joseph Rauch, one of the plaintiffs here, the planning board passed a resolution requesting the township committee to enact a zoning ordinance amendment to authorize plans such as the amended Brunswick Acres plan. At the same meeting the planning board specified 22 requirements to be fulfilled prior to final approval of Brunswick Acres, including, e.g., State Water Policy and Supply Division certification of the realignment, widening and deepening of Oakey's Brook, which meanders through the tract. Many of the 22 requirements are imposed under the Municipal Planning Act. L. 1953, c. 433, N.J.S.A. 40:55-1.1 et seq.
The South Brunswick Township Planning Board at its next meeting on September 11, 1962 adopted a second resolution endorsing specifically and recommending to the township committee enactment of a cluster or open space amendment to the zoning ordinance. Such an amendment was passed on first reading as ordinance No. 19-62 on September 18, 1962, with the accompanying ordinance No. 20-62. The planning board approved the two ordinances on September 26, 1962. Final passage by the township committee took place on October 2, 1962.
*604 Yenom Corporation has submitted a new subdivision plan in accordance with the cluster or open space zoning amendment, with planning board action on final approval awaiting the outcome here. Any issue as to the specific terms of the amended subdivision plan or the right to build on 20% less than 13,500-square-foot square lots is not within the frame-work of this prerogative writ action. Throughout the trial plaintiffs conceded the applicability of ordinance No. 19-62 to 13,500-square-foot lot sizes on the Brunswick Acres tract, thus permitting construction of houses on 10,800-square-foot lots if the builder availed itself of the cluster or open space zoning option.
The broad charge that ordinances Nos. 19-62 and 20-62 were enacted to advance the special interest of Yenom Corporation is without support in the proof. Admittedly, the Brunswick Acres development was predominantly in the minds of Jack Stein, chairman of the planning board, and other municipal officials prior to the planning board resolutions and zoning ordinance amendments.
To avoid the consequences of a drastic expansion in population without green spaces or adequate school or other public sites, the municipality sought relief through legislation. The deadline of December 9, 1962 for final approval of the first Yenom Corporation plan was a significant consideration. Rebutting the contention that municipal officials acted in the interest of Yenom Corporation, not that of the municipality, are the statements of various officials on the witness stand that they voted for ordinances Nos. 19-62 and 20-62 because of projected growth, need for school sites, need for recreation sites and parklands and reduction of street maintenance costs.
The benefits to Yenom Corporation, other than a saving in street construction costs, are obscure. The same number of homes may be constructed, but on smaller lots. Lands acceptable to the planning board, including at least one five-acre parcel, must be deeded to the municipality. The paramount concern of the municipal officials, as one of them graphically described, was to avoid a "bad deal," the Brunswick *605 Acres plan for 526 homes on 13,500-square-foot lots with only ten acres reserved for public use. Such an objective is valid, if enacted as ordinance No. 19-62 was enacted, as general, not special, legislation.
By overwhelming authority otherwise valid legislation is not nullified because it accomplishes an incidental benefit to one or a few private individuals. Kozesnik v. Montgomery Tp., 24 N.J. 154, 173 (1957); State v. Garden State Racing Ass'n, 136 N.J.L. 173 (E. & A. 1947), and 2 Sutherland, Statutory Construction, § 2107, p. 27 (1943). The enactment of the cluster or open space zoning ordinance is concluded to have been in good faith, in accordance with legislative objectives in zoning and with only incidental benefit to Yenom Corporation as an individual developer.
The specific points raised by the plaintiffs, in support of the argument that the municipal officials favored Yenom Corporation, are that cluster or open space zoning deviates from the master plan report, that there are surface and subsurface drainage problems on the Brunswick Acres tract, that there are other lands available for public uses in the municipality, and that Yenom Corporation should have proceeded by application for a zoning variance.
Deviations from a master plan report are not fatal. Professional advice supports the good faith of a municipal governing body in promulgating a zoning ordinance or master plan, S & L Associates, Inc. v. Washington Twp., 61 N.J. Super. 312, 324 (App. Div. 1960), but it need not be followed to the letter. The legislative decision is the township's, not the planning consultant's. Testimony here amply supported the modifications of the master plan report. South Brunswick Township officials considered that cluster or density zoning was more advantageous in zoning districts permitting smaller lot sizes, with intensified school and parkland needs, and that reduction of minimum frontage as well as minimum lot size requirements, by smaller percentages, was a practical adjustment.
*606 The master plan report advocated industrial-research zoning for the northeast corner of the township, including the proposed Brunswick Acres site, but this was in fact part of the Residential 20 Zone for which there was a pending and valid preliminary approval for a large subdivision for residential development.
Various engineers and soil specialists testified at the trial on the limitations of Brunswick Acres tract for dwelling sites because of flooding and drainage problems. The consensus was that these could be overcome, but no advantage facilitating building is discernible because of the cluster or open space amendments.
Public ownership of other lands in the 41 square miles of South Brunswick Township is of little relevance. One 74-acre tract, inaccessible by any road and spongy in soil texture, is in the Sand Hills area between Kendall Park and Brunswick Acres. While it may be of future value for public use in the municipality, the existence of this tract is not support for the claim that the cluster or open space zoning ordinance was enacted in the private interests of Yenom Corporation and not for valid legislative purposes.
Ordinance No. 19-62 is applicable in 60 to 65% of the land area in South Brunswick Township. Proper procedure was followed in amending the zoning ordinance to accomplish such a broad scale revision. Judicial decisions striking down zoning ordinances because they constitute spot zoning and by-pass the board of adjustment deal with single parcels or limited areas. Conlon v. Bd. of Public Works, Paterson, 11 N.J. 363 (1953); cf. Kozesnik v. Montgomery Tp., 24 N.J. 154 (1957).
Plaintiffs seek, finally, to upset the cluster or open space zoning ordinance of South Brunswick Township on the ground that N.J.S.A. 40:55-35 was not complied with by the planning board. This statute requires submission of zoning ordinance amendments to the planning board, if one exists in the municipality, for approval, disapproval or suggestions. The statute continues:
*607 "* * * the planning board shall have a reasonable time, not less than thirty days, for consideration and report, and in the case of an unfavorable report by the planning board such amendment shall not become effective except by a favorable vote of two-thirds of the governing body."
The proofs in this litigation establish adequate consideration of cluster or density zoning by the South Brunswick Township Planning Board, including four new members who took office on July 1, 1962; specific approval of the concept in the resolutions dated August 25 and September 11, 1962; and endorsement of the ordinances under attack on September 18, 1962, within two weeks of their final adoption.
The construction of N.J.S.A. 40:55-35 is settled by several judicial decisions. The purpose of the 30-day period is to provide the planning board a reasonable time for consideration and report, but its elapse is not a jurisdictional prerequisite. Full consideration by the planning board within less than 30 days suffices to meet the statute. Wollen v. Ft. Lee, 27 N.J. 408, 417 (1958); Vickers Tp. v. Gloucester Tp., 37 N.J. 232, 252 (1962). Nor is it mandatory under N.J.S.A. 40:55-35 that the planning board consider the exact ordinance itself. The planning board members are not legislative draftsmen. Their consideration and approval involve the substantive contents of a zoning ordinance amendment, not its specific wording. Abel v. Elizabeth Bd. of Works, 63 N.J. Super. 500, 513 (App. Div. 1960).
For all the foregoing reasons decision is in favor of the defendants. Will counsel submit an order.