In the Matter of BAYSWATER REALTY & CAPITAL CORP., Respondent, v PLANNING BOARD OF THE TOWN OF LEWISBORO, Appellant.

Second Department, August 7, 1989

### APPEARANCES OF COUNSEL

*Charles B. McGroddy, III,* for appellant.

*Shamberg Marwell Cherneff & Hocherman, P. C. (Henry M. Hocherman* and *Geraldine N. Lewis* of counsel), for respondent.

*Terry Rice* for New York Planning Federation, *amicus curiae.*

### OPINION OF THE COURT

Per Curiam.

The petitioner Bayswater Realty & Capital Corporation (hereinafter Bayswater) is the owner of a 226.99-acre parcel of land situated on the north side of Route 35 in the Town of Lewisboro, New York. In 1984, Bayswater applied to the Lewisboro Town Planning Board seeking approval of a proposed conventional subdivision plat containing approximately 142 lots, which plat did not provide for any land to be set aside for park or playground use. After subsequent meetings

with the Town Board, it was ultimately determined that a total of 115 lots could be developed on the site in accord with Town Law § 277.

Thereafter, the petitioner filed a proposed cluster plat pursuant to Town Law § 281 which contained 115 lots and approximately 60 acres of open space. It is undisputed that the open space is contained in seven noncontiguous parcels and that portions of the space will be utilized for the construction of storm water retention basins and other drainage facilities. Significantly it appears that approximately 53% of the open space is composed of either wetlands or steep slopes and that 90% of the wetlands on the site are located in these seven parcels. The record further reveals that on January 28, 1983, Bayswater's predecessor in title, a Dr. Lambert, granted the town a license to use a portion of the property as a walking trail. Bayswater consented to the continuation of this license and its plat made provision for a 296-foot trail.

By resolution dated July 21, 1987, the Town Planning Board granted final approval of Bayswater's proposed cluster plat, subject to certain conditions. Condition number 25 of the resolution required that Bayswater pay a "recreation fee" of $5,000 per lot in lieu of the setting aside of land suitable for parkland pursuant to Town of Lewisboro Land Development Regulations § 44.15.[1]

■ By verified amended petition, dated August 27, 1987, Bayswater commenced a proceeding pursuant to CPLR article 78 seeking to set aside and annul that portion of the Town Planning Board's determination which required payment of a $5,000 per lot recreation fee. In its petition, Bayswater alleged, *inter alia,* that the town lacked the authority to impose a recreation fee, inasmuch as the proposed cluster plat included approximately 60 acres of "open space". In an affidavit submitted by the Town Planning Director in opposition to the petition, it was asserted, *inter alia,* that, "[t]he open space

---

1. Town of Lewisboro Land Development Regulations § 44.15 states that, "[w]here the Planning Board deems that such a reservation of land within a subdivision would be inappropriate because of the character, location or size of the land which could be reserved, the Planning Board may waive such a requirement, subject to appropriate conditions. Such appropriate conditions may include the requirement that the applicant pay a fee to the Town of Lewisboro, which money shall be deposited in a trust fund to be used for the purpose and development of permanent park and playground sites within the Town. In those cases where a fee is required, the amount of this fee shall be as determined by the Town Board". The total fee pursuant to the resolution granting final subdivision approval amounts to $575,000.

parcels shown on the Bayswater subdivision are totally unsuited for park or recreation uses". The affidavit filed by the petitioner's attorney did not specifically address the assertions made by the town with respect to the suitability of the open space for development of park, playground or other recreational purposes, but argued instead that its reservation satisfied any obligation to pay a fee. The Supreme Court agreed, determining, that "payment of any recreation fee under Town Law § 281 is clearly improper and unauthorized". Although the court did not reach the question of whether the "open space" resulting from the clustering was suitable for playground and recreational purposes, it concluded that the town was nevertheless without authority to require a fee where the developed cluster plat includes an open space allotment. The Planning Board of the Town of Lewisboro now appeals, arguing that the court erred in concluding that the town was without authority to impose a fee under the circumstances presented. We agree.

It is well settled that towns and municipal governments—lacking inherent power to enact or enforce zoning or land use regulations—exercise such authority solely by legislative grant—in the absence of which their actions are ultra vires and void (see, e.g., Matter of Kamhi v Planning Bd., 59 NY2d 385). Through the enactment of Town Law article 16, however, the Legislature has conferred upon municipalities "a wide variety of powers to zone the town into districts to regulate its growth and development, to establish procedures for adoption and modification of local zoning regulations, to review and enforce zoning decisions and to establish an official map" (see, Matter of Kamhi v Planning Bd., supra, at 389). In particular, Town Law § 277 "permits the [town] board to require plats of undeveloped lands to show, among other things, 'in proper cases and when required by the planning board, a park or parks suitably located for playground or other recreational purposes' " (see, Matter of Kamhi v Planning Bd., supra, at 389, quoting Town Law § 277 [1]). Town Law § 277 further provides that if "the board determines that a suitable park cannot be located because the land is not of adequate size or because for other reasons a park is not practical, the board may condition approval of the plat on payment of an amount of money to a trust fund to be used by the town board for development of a neighborhood park or playground" (see, Matter of Kamhi v Planning Bd., supra, at 389).

The procedures by which developers may seek approval for cluster zoning are contained in Town Law § 281. Cluster zoning has been generally described as "a technique of regulation which permits a developer to construct dwellings in a pattern which does not literally comply with the area restrictions of the zoning ordinance" (2 Anderson, American Law of Zoning § 11.02, at 418-419 [3d ed]; 5 Rathkopf, Law of Zoning and Planning § 65.04, at 65-110—65-111). More specifically, Town Law § 281 "provides that a planning board when considering residential plats may allow some deviation from the area, yard and frontage restrictions for lots found in the zoning ordinance" (see, Matter of Kamhi v Planning Bd., supra, at 390). The planning board may not, however, "permit any deviation from density requirements nor may it waive or amend use restrictions" (see, Matter of Kamhi v Planning Bd., supra, at 390). Given impetus by the inability of traditional Euclidian zoning principles to accommodate the dramatic trend towards subdivision development, cluster zoning was perceived as a means of encouraging flexibility in regulating the development and growth of residential communities (see, 2 Anderson, American Law of Zoning § 11.02, at 418 [3d ed]; 5 Rathkopf, Law of Zoning and Planning § 65.04; Matter of Friends of Shawangunks v Knowlton, 64 NY2d 387, 395; Matter of Kamhi v Planning Bd., 89 AD2d 111, 117; Chrinko v South Brunswick Twp. Planning Bd., 77 NJ Super 594, 187 A2d 221, 225). As one leading authority has observed, "the purpose of cluster development is to permit a procedure for development which will result in improved living and working environments, which will promote more economical subdivision layout, which will encourage a variety of types of residential dwellings, which will encourage ingenuity and [originality in total subdivision and] individual site design and which can preserve open space to serve recreational, scenic, and public service purposes and other purposes related thereto without altering existing densities or building bulk for the whole tract" (5 Rathkopf, Law of Zoning and Planning § 65.04, at 65-115—65-116; see, Prince George's County v M&B Constr. Corp., 267 Md 338, 297 A2d 683, 684). Accordingly, "[e]conomy, flexibility and scenic beauty are all appropriate reasons for permitting cluster zoning" (see, Matter of Kamhi v Planning Bd., 59 NY2d 385, 390, supra; Matter of Friends of Shawangunks v Knowlton, supra, at 395).

Cognizant of the foregoing, and guided by a review of the objectives sought to be achieved by the enactment of Town

Law §§ 277 and 281, we conclude that a town planning board possesses the authority to require, as a condition to approval of a cluster subdivision plat, the payment of a sum of money in lieu of the reservation of land suitable for park, playground or other recreational purposes (Town Law §§ 277, 281; *see, Matter of Kamhi v Planning Bd.,* 59 NY2d 385, *supra).* By entrusting to town planning boards the authority to require the reservation of parkland—or the payment of a fee in lieu thereof—as a prerequisite to the granting of conventional subdivision approval, the framers of the Town Law have conferred upon municipalities an indispensable tool through which the goal of effective community planning may be more readily achieved. The petitioner has failed to establish why this key attribute of the Town Planning Board's zoning authority is incompatible with the foregoing legislative design when exercised within the context of an application for cluster subdivision approval. Indeed, it is beyond dispute that the creation of unused or open space so as "to serve recreational, scenic, and public service purposes" is a key feature associated with cluster development *(see,* 5 Rathkopf, Law of Zoning and Planning § 65.04, at 65-116; 2 Anderson, American Law of Zoning § 11.02, at 420 [3d ed]; *see also, Matter of Kamhi v Planning Bd., supra,* at 390; *Chrinko v South Brunswick Twp. Planning Bd.,* 77 NJ Super 594, 187 A2d 221, 225, *supra).* Significantly, this court has liberally construed Town Law § 281 by observing that, "[s]ection 281 of the Town Law is a remedial statute as its historical development demonstrates and 'is consonant with progressive legislative policy toward the increase of specifically delegated prerogatives in the area of subdivision control' " *(see, Matter of Kamhi v Planning Bd.,* 89 AD2d 111, 125, *revd on other grounds,* 59 NY2d 385, *supra,* quoting *Delaware Midland Corp. v Incorporated Vil. of Westhampton Beach,* 79 Misc 2d 438, 441, *affd* 48 AD2d 681, *affd* 39 NY2d 1029). Our construction of Town Law § 281 in the present case comports with the foregoing perception of the statute's remedial function.[2]

---

2. The petitioner, in arguing the contrary, relies on certain dicta in this court's *Kamhi* decision, in which it was observed that pursuant to Town Law § 281, the Town Planning Board lacks discretion "to allow payment of money in lieu of setting aside open space" *(see, Matter of Kamhi v Planning Bd.,* 89 AD2d 111, 127). The foregoing statement, however, indicates only that the Planning Board may not accept payment in lieu of setting aside "open space" pursuant to § 281—not that it is precluded from requiring the reservation of suitable parkland—or the payment of a fee in lieu thereof—

Moreover, the application of Town Law § 277 to cluster plats, with regard to the setting aside of space suitable for parkland or the exaction of a fee in lieu thereof, would further the objectives of cluster zoning by encouraging flexibility and originality in subdivision design and enhancing the Town's ability to ensure that adequate recreational lands are reserved as part of its local communities. To hold otherwise would be to permit a developer to secure the cost saving associated with clustering (see, *Matter of Friends of Shawangunks v Knowlton, supra,* at 395, n 6; *Bruni v City of Farmington Hills,* 96 Mich App 664, 293 NW2d 609, 610; 5 Rathkopf, Law of Zoning and Planning § 65.04, at 65-117), while at the same time allowing him to avoid the payment of a recreation fee for which he would otherwise be liable had the same plat been filed for conventional subdivision approval. Such a construction of the Town Law would not only impede the development of recreational lands and facilities, but could discourage Town Planning Boards from granting cluster applications, ultimately depriving communities of the salutary benefits to be derived from such development.

■ The petitioner alternatively theorizes that even if the Town Planning Board may permissibly exact a fee in lieu of suitable parkland, the 60 acres of open space resulting from the instant clustering process must be deemed to satisfy any condition that lands be set aside for park, playground or recreational purposes. More specifically, the petitioner argues that the resulting open space displayed on its subdivision plat itself serves a significant recreational function by ensuring the reservation of esthetically attractive natural surroundings. Since—according to the petitioner—the 60 acres of open space constitutes land suitable for recreational purposes within the meaning of Town Law § 277, the town may not exact a fee in addition thereto. We find the petitioner's contentions to be unpersuasive.

We note initially, that any subdivision developed in accord

pursuant to its planning authority as conferred by Town Law § 277. Nor does Town Law § 281 (d) require a contrary result. While Town Law § 281 (d) empowers the Town Planning Board to preserve the character of lands suitable for park, recreation or open space which may result from the clustering process (see, e.g., 5 Rathkopf, Law of Zoning and Planning § 65.04; at 65-117—65-118), the provision in no sense precludes the town from requiring the reservation of parklands—or other lands suitable for recreational purposes within the meaning of Town Law § 277—where the clustering process does *not* result in lands available for such purposes.

with the cluster principle will result in additional unused space over and above that displayed on the developer's previously filed conventional subdivision plat *(see, e.g., Matter of Kamhi v Planning Bd.,* 59 NY2d 385, 390, *supra).* The petitioner's construction of the Town Law, however, would presumably allow a developer to contend that any open land resulting from cluster development constitutes land suitable for recreational purposes as prescribed by Town Law § 277. We find the petitioner's contentions to be inconsistent with the underlying concept of flexibility associated with cluster zoning. While the open land which invariably remains after clustering has been accomplished may result in the preservation of esthetically compelling natural surroundings, we believe that the framers of the Town Law sought to confer upon municipalities the flexibility to require—within the parameters imposed by section 277—the reservation of land which furthers the particular recreational needs of the community in question. The petitioner does not dispute that these needs may permissibly encompass the reservation of lands suitable for the construction of parks, playgrounds or other conventionally developed recreational facilities. When so viewed, the "open space" resulting from the present clustering process cannot be perceived as a viable substitute for the reservation of suitable parklands within the meaning of Town Law § 277.[3]

Accordingly, the Supreme Court erred in annulling that portion of the Town Planning Board's subdivision approval resolution which required the payment of a $5,000 per lot recreation fee.

BROWN, J. P., KUNZEMAN, EIBER and KOOPER, JJ., concur.

Ordered that the appeal from the judgment dated November 18, 1987, is dismissed, without costs or disbursements, as that judgment was superseded by the order dated January 27, 1988, made upon reargument; and it is further,

---

3. Although—as the town concedes—it failed to make a specific finding that the open space involved herein was not suitable for parkland, its conclusion that a fee was due and owing clearly signifies its intent to so find. In any event, the parties are not in dispute with respect to the physical description of the open space, nor does the petitioner contend that the open space is suitable for development of playground or parkland facilities. Rather, the petitioner contends, *inter alia,* that the natural condition of the open space satisfies any requirement that land be set aside for recreational purposes. In light of the foregoing, we perceive no utility in remitting the matter for further proceedings on the foregoing question, inasmuch as the issue may—in light of the parties' contentions—be resolved on appeal.

Ordered that the order dated January 27, 1988, is reversed, insofar as appealed from, on the law, the judgment dated November 18, 1987, is vacated, the determination is confirmed, and the proceeding is dismissed on the merits, with costs.