*463
 
 OPINION OF THE COURT
 

 Hancock, Jk., J.
 

 Must a Town Planning Board in approving a cluster subdivision plat accept the open spaces created by the clustering process in satisfaction of its requirement that the developer either provide recreational land or pay a fee in lieu thereof? We hold that the Planning Board’s authority is not so limited and that — provided it makes the determinations called for by Town Law § 277 (1) to the effect that additional recreational land is, in fact, needed in the town and that such need will not be met by open lands created within the plat itself— the Board may demand the substitutional monetary payment pursuant to Town Law § 277 (1) even though, under the authority of Town Law § 281 (d), it is also requiring the developer to set aside the open lands resulting from the cluster.
 

 In this case, the Appellate Division properly rejected petitioner’s contention that the open space reserved under the terms of the Planning Board’s approval of its cluster subdivision under section 281 (d) necessarily satisfies any recreational land or "in lieu” payment condition which the Planning Board could impose under section 277 (1). The court, therefore, correctly held that the Planning Board was not precluded from requiring both a permanent reservation of the open space under section 281 (d) and a recreation fee under section 277 (1)
 
 (see, Matter of Bayswater Realty & Capital Corp. v Planning Bd.,
 
 149 AD2d 49, 55). Because the Planning Board did not make the determinations called for by section 277 (1) before imposing the recreation fee, however, there must be a remand to the Planning Board for further consideration and, if appropriate, for required findings.
 

 I
 

 Petitioner owns a 227-acre parcel of land in the Town of Lewisboro, New York. In 1984, it sought approval from the Town Planning Board of a proposed conventional subdivision plat for the parcel showing 142 lots. As a result of several
 
 *464
 
 discussions between petitioner and the Planning Board, it was eventually determined that the applicable density requirements would permit a conventional subdivision of no more than 115 lots. Neither petitioner’s original proposal nor any of the subsequent revisions made provision for land to be reserved for park, playground or other recreational use.
 

 Thereafter, petitioner submitted a proposal for approval of the parcel as a cluster subdivision pursuant to the authority granted by the Lewisboro Town Board to the Planning Board to modify the applicable provisions of the town zoning ordinance pursuant to Town Law § 281 in approving residential subdivision plats.
 
 [1]
 
 The number of lots (115) for the 227 acres under the revised proposal was the same. Although the proposed cluster plat still complied with the prevailing density restrictions in the town zoning ordinance, the area of each lot was reduced below the minimum required for a conventional subdivision under the governing minimum area standards. The resulting open space (60.2 acres), generated by the reduction in lot size, was shown within the proposed plat on seven noncontiguous parcels of open lands. Ninety percent of the site’s wetlands were in these open spaces where, it appears, the development’s storm water retention basins and other drainage facilities were to be located. The open spaces, in greater part, consisted of either wetlands or steep slopes.
 

 On July 21, 1987, the Planning Board gave final approval to petitioner’s proposed cluster plat. Under the conditions of the approval resolution, petitioner became bound by a declaration of covenants and restrictions to provide for the perpetual
 
 *465
 
 reservation of the 60.2 acres of open space
 
 [2]
 
 including a foot trail system affording access to portions of the open space to town residents. Condition No. 25 of the approval resolution requires that petitioner pay a "recreation fee” in accordance with the Lewisboro Land Development Regulations.
 
 [3]
 

 None of the recitations or other provisions in the Town Board’s final approval resolution contains a finding that the proposed subdivision presents a "proper case” for requiring a park or parks suitably located for playgrounds or other recreational purposes within the town or that the open spaces set aside in the proposal are not of sufficient size or of the character to fulfill such requirement (see, Town Law § 277 [1]).
 

 On August 27, 1987, petitioner commenced the instant CPLR article 78 proceeding seeking to annul that part of the Planning Board’s approval resolution requiring payment of
 
 *466
 
 the recreation fee. Supreme Court agreed with petitioner’s argument that the open lands set aside as part of its approved cluster subdivision satisfied any obligation to pay a recreation fee. The court accordingly annulled condition No. 25, holding, on the authority of
 
 Matter of Kamhi v Planning Bd.
 
 (89 AD2d 111, 127,
 
 revd on other grounds
 
 59 NY2d 385) and
 
 Kanaley v Brennan
 
 (119 Misc 2d 1003, 1012,
 
 affd
 
 120 AD2d 974), that the Planning Board could not impose a fee where it also required the permanent reservation of open lands as a condition of its approval of the subdivision under Town Law § 281. The Supreme Court adhered to this reasoning in denying respondent’s motion for renewal and reargument. Because it concluded that the Planning Board lacked any authority to impose a recreation fee, Supreme Court did not address questions relating to the characteristics of the 60.2 acres of open space or to the Planning Board’s failure to make findings as a prerequisite to its imposition of a recreation fee under Town Law § 277 (1).
 

 The Appellate Division unanimously reversed and dismissed the petition. It reasoned that, while the "open land which invariably remains after clustering has been accomplished may result in the preservation of esthetically compelling natural surroundings * * * the framers of the Town Law sought to confer upon municipalities the flexibility to require —within the parameters imposed by section 277 — the reservation of land which furthers the particular recreational needs of the community in question.” (149 AD2d 49, 56.) With respect to petitioner’s proposal, the court concluded that the 60.2 acres of " 'open space’ resulting from the present clustering process [could not] be perceived as a viable substitute for the reservation of suitable parklands within the meaning of Town Law § 277.”
 
 (Id.,
 
 at 56.)
 

 The Appellate Division dismissed petitioner’s alternative argument that the resolution imposing the recreation fee under section 277 (1) was deficient because of the Planning Board’s failure to make the findings required under that section. It theorized that the Planning Board’s "conclusion that a fee was due and owing clearly signifie[d] its intent” (149 AD2d, at 56, n 3) to make such findings and obviated any need for remittal.
 

 We now modify by remitting the matter to Supreme Court with directions to remand to the Planning Board for further consideration.
 

 
 *467
 
 II
 

 Before addressing petitioner’s argument that the Planning Board was without power to impose the recreation fee, we observe that the powers which the Town Board is authorized to grant to the Planning Board to modify zoning restrictions under section 281 were intended to be used with and to supplement the powers given to the Planning Board in approving subdivisions under other sections of article 16 of the Town Law
 
 (see, Matter of Kamhi v Planning Bd.,
 
 59 NY2d 385, 390-392,
 
 supra).
 
 Cluster development is an optional planning technique permitting Planning Boards to exercise greater flexibility in subdivision approval for the purpose of achieving more efficient use of land containing unusual features (e.g., the wetlands and steep slopes in petitioner’s land), for facilitating economical provision for streets and utilities, as well as for preserving the natural and scenic qualities of open lands (Town Law § 281;
 
 see, Matter of Kamhi v Planning Bd.,
 
 59 NY2d 385, 390,
 
 supra; see generally, 5
 
 Rathkopf, Zoning and Planning § 65.04 [1990]). Under the section 281 clustering process, the Planning Board may, in its discretion, in order to further such purposes, permit deviation from applicable minimum area, side and rear yard, depth, and frontage requirements. But the Board may not permit any deviation from over-all density requirements
 
 (see,
 
 Town Law § 281 [b]) or from other applicable statutory and zoning ordinance standards including use restrictions
 
 (see, Matter of Kamhi v Planning Bd., supra,
 
 at 390).
 

 We have specifically noted that the Planning Board, in approving a plat under section 281, may exercise powers granted in other sections of article 16 of the Town Law, including section 277
 
 (see, Matter of Kamhi v Planning Bd., supra,
 
 at 391). Thus, we dismiss any suggestion — implicit in petitioner’s argument and its citation of
 
 Matter of Kamhi v Planning Bd.
 
 (89 AD2d 111, 127,
 
 supra)
 
 and
 
 Kanaley v Brennan
 
 (119 Misc 2d 1003, 1006-1007,
 
 affd
 
 120 AD2d 974, supra)— that merely because section 281 does not contain a provision specifically authorizing the requirement of a recreation fee payment, the Planning Board lacked the power to impose such a requirement in this case.
 

 The essence of petitioner’s argument that there was no authority to impose a fee requirement in the circumstances here is this: because the Planning Board, in approving the cluster subdivision, exercised its authority to require peti
 
 *468
 
 tioner to reserve "lands available for park, recreation, open space, or other municipal purposes” under section 281 (d), it could not, in addition, condition its approval on payment of a recreation fee in lieu of requiring "a park or parks suitably located for playground or other recreational purposes” under section 277 (1). Petitioner argues, in effect, that the 60.2 acres of open space required to be set aside by the Planning Board under section 281 (d) are, as a matter of law, the
 
 equivalent
 
 of "a park or parks suitably located for playground or other recreational purposes” which the Board is empowered to require under section 277 (1). Therefore, petitioner maintains, by setting aside the 60.2 acres it satisfied whatever obligation for recreation or playground areas the Board could properly impose under section 277 (1).
 

 But the power of the Planning Board to require that a plat show park, playground or recreational areas under section 277 (1) is not equivalent to the power it possesses under section 281 (d) to attach conditions to the ownership, use or maintenance of open lands when exercising discretion to modify minimum lot area standards in the clustering process. While both section 277 (1) and section 281 (d) are intended to serve the general aim of fostering the preservation of open lands, the provisions are designed to address different societal needs. While they may be employed simultaneously, they operate independently.
 

 Section 277 (1) gives the Planning Board an additional planning control device to be used as a means of reserving lands needed by the broader community for park and recreational purposes
 
 (see, Jenad, Inc. v Village of Scarsdale,
 
 18 NY2d 78, 83-85). The section represents a legislative reaction to the threatened loss of open land available for park and recreational purposes resulting from the process of development in suburban areas and the continuing demands of the growing populations in such areas for additional park and recreational facilities
 
 (see, Jenad, Inc. v Village of Scarsdale, supra,
 
 at 84;
 
 see generally, 2
 
 Anderson, New York Zoning Law and Practice §§21.18, 21.19 [3d ed]). The park and recreational needs which section 277 (1) is designed to meet are those of the town or the community at large — not the isolated needs within the subdivision, itself.
 

 In exercising its powers under section 277 (1), the Planning Board, in approving a conventional subdivision, may, in a proper case, require that the plat itself show parklands suit
 
 *469
 
 able for playground or other recreational use. When, however, a particular subdivision does not have land of sufficient size or of the proper character to be set off and committed for the town’s recreation and playground requirements, section 277 (1) provides that the developer may be directed to pay a sum of money in lieu of such commitment
 
 (see, Riegert Apts. Corp. v Planning Bd.,
 
 57 NY2d 206, 210). It is significant that if such "in lieu” payment is permitted, the statute specifies that the sum paid
 
 "shall constitute a trust fund
 
 to be used by the town exclusively for neighborhood park, playground or recreation purposes
 
 including the acquisition of property”
 
 (Town Law § 277 [1] [emphasis added]). From this provision, it is evident that the primary concerns addressed by section 277 (1) are the present and anticipated future requirements of the town or broader community, not the subdivision alone.
 

 In contrast, the conditions which the Planning Board is empowered by the Town Board to attach under section 281 (d) relate to the open space inside the subdivision resulting from the exercise of the Planning Board’s authority to modify the conventional subdivision plat by reducing the minimum area and other requirements for individual lots. The concern is with assuring that the open lands thus created within the proposed plat through clustering are preserved as such and not built upon and that if any of such lands are available "for park, recreation, open space, or other municipal purposes
 
 directly related to the plat”
 
 (§ 281 [d] [emphasis added]), that they be kept open and maintained for such purposes.
 

 The authority granted under section 281 (d) gives the Planning Board a means of establishing permanent control over the open lands generated by the clustering process by attaching "conditions on [their] ownership, use, and maintenance” in return for the Planning Board’s discretionary relaxation of the zoning restrictions which makes the clustering possible. Not surprisingly, since the focus of section 281 (d) is on the preservation of open lands
 
 within the subdivision
 
 and not with meeting the present and future requirements of the broader community, the Planning Board is not authorized under section 281 (d) (as contrasted with section 277 [1]) to allow payment of money in lieu of setting aside the open space created by the cluster
 
 (see, Matter of Kamhi v Planning Bd.,
 
 89 AD2d 111, 127,
 
 revd on other grounds
 
 59 NY2d 385,
 
 supra).
 
 Obviously, if it were otherwise and the statute permitted the Planning Board to accept money in return for freeing the open lands for development by waiving any controls or restric
 
 *470
 
 tions it might otherwise impose under section 281 (d), the Board could increase the permitted density of the subdivision in contravention of section 281 (b).
 

 Thus, we conclude that the Planning Board’s powers under section 281 (d) to attach conditions to open lands and to require under section 277 (1) that a plat show parklands available for playground or other recreation purposes are not mutually exclusive
 
 (cf, Riegert Apts. Corp. v Planning Bd.,
 
 105 Misc 2d 298, 301-302,
 
 affd
 
 78 AD2d 595,
 
 revd on other grounds
 
 57 NY2d 206,
 
 supra).
 
 In a "proper case”, where it has made the necessary findings, the Planning Board is not precluded from exercising its powers under both sections 277 (1) and 281 (d) with respect to the same subdivision.
 

 Ill
 

 The question remains whether condition No. 25, requiring the payment of the recreation fee, must be annulled, in any event, because the Planning Board did not make the findings necessary to trigger its authority to require a payment in lieu of setting aside park or recreation lands under section 277 (1). Petitioner argues that the Appellate Division erred in holding that the Planning Board’s action imposing the payment requirement "signifies its intent to so find” (149 AD2d, at 56, n 3), thereby making findings unnecessary. We agree with petitioner.
 

 The Planning Board made no findings as required by section 277 (1), although the language is mandatory. Manifestly, the Legislature could not have intended to give Planning Boards unrestricted power to impose at whim on developers the requirement that they set aside lands or pay money in lieu thereof. Indeed, such unlimited authority would conflict with the basic rule that there must be a showing of a sufficient nexus between the imposition of such a financial burden on a private party and the public benefit to be achieved therefrom
 
 (see, Kamhi v Town of Yorktown,
 
 74 NY2d 423, 430).
 

 Before the Planning Board may exercise its authority to impose a payment requirement in lieu of setting aside lands under section 277 (1), it must make two determinations with respect to the proposed plat: (1) that a "proper case” exists for requiring the developer to show on the plat "a park or parks suitably located for playground or other recreational purposes”, and (2) "that a suitable park or parks of adequate size
 
 *471
 
 [to meet the requirement] can not be properly located in any such plat or is otherwise not practical” (§ 277 [1]).
 

 In the ordinary situation where a conventional subdivision plat is submitted, the Planning Board first determines whether there is a "proper case” for requiring the developer to show parklands "suitably located for playground or other recreational purposes” (§ 277 [1]) within the boundaries of the subdivision. Such determination requires an evaluation of the present and anticipated future needs for park and recreational facilities in the town based on projected population growth to which, of course, the particular subdivision development will contribute.
 

 Assuming that- it finds that the town needs additional park and recreation space, the Planning Board must then decide whether to make the developer provide such space within the proposed plat (thus reducing the number of permitted lots in the subdivision) or pay money as a substitute. This determination necessarily entails an assessment of the size and suitability of any areas within the subdivision plat which could be possible locations for park and recreation facilities as well as the consideration of practical factors including whether there is a need for additional facilities in the immediate neighborhood.
 

 Where, as here, the Planning Board has acceded to the request of the developer that it modify lot size requirements to permit a cluster subdivision, the considerations, except for one, are the same. There may be areas within the open spaces created by the clustering process which are suitable for park, playground or other recreational purposes. If so, the Planning Board must consider the potential contribution of these areas to the town’s recreation needs in determining whether additional recreational land is required (§277 [1]). If, despite the contribution of the open spaces created through the clustering process, the Planning Board finds that additional recreational land is still needed, the town is not precluded — contrary to the implication in the Appellate Division decision (149 AD2d, at 54-55, n 2) — from requiring, pursuant to section 277 (1), that the developer provide additional land or pay a fee in lieu thereof.
 

 Accordingly, the order of the Appellate Division should be modified, with costs to petitioner, by remitting the matter to
 
 *472
 
 Supreme Court with directions to remand to the Planning Board for further consideration in accordance with this opinion, and, as so modified, affirmed.
 

 Chief Judge Wachtler and Judges Simons, Kaye, Alexander, Titone and Bellacosa concur.
 

 Order modified, etc.
 

 [1]
 

 . Town Law § 281, insofar as pertinent here, provides:
 

 "Approval of plats; conditions for changes in zoning provisions "The town board is hereby empowered by resolution to authorize the planning board, simultaneously with the approval of a plat or plats pursuant to this article, to modify applicable provisions of the zoning ordinance, subject to the conditions hereinafter set forth and such other reasonable conditions as the town board may in its discretion add thereto. * * * The purposes of such authorization shall be to enable and encourage flexibility of design and development of land in such a manner as to promote the most appropriate use of land, to facilitate the adequate and economical provision of streets and utilities, and to preserve the natural and scenic qualities of open lands.”
 

 By resolution dated September 4, 1973, the Lewisboro Town Board authorized the Planning Board to modify applicable provisions of the town zoning ordinance pursuant to section 281, simultaneously with the approval of residential subdivision plats, subject to the conditions in section 281 and to the conditions set forth in the resolution.
 

 [2]
 

 . The imposition of such a restriction on the open lands created through the clustering process is one of the conditions specifically authorized under Town Law § 281 (d), which, in pertinent part, provides: "In the event that the application of this procedure results in a plat showing lands available for park, recreation, open space, or other municipal purposes directly related to the plat, then the planning board as a condition of plat approval may establish such conditions on the ownership, use, and maintenance of such lands as it deems necessary to assure the preservation of such lands for their intended purposes.”
 

 [3]
 

 . Land Development Regulations §§ 44.11 (general standards for reservations for parks and playgrounds) and 44.15 (fee in lieu of reservation) grant authority to the Planning Board to require reservation of land for park or playground purposes or payment of a fee in lieu thereof. Land Development Regulation §44.11 essentially tracks Town Law §277 (1) which, in pertinent part, provides: "Before the approval by the planning board of a plat showing lots, blocks or sites, with or without streets or highways, or the approval of a plat already filed in the office of the clerk of the county wherein such plat is situated if such plat is entirely or partially undeveloped, such plat shall also show
 
 in proper cases and when required by the planning board,
 
 a park or parks suitably located for playground or other recreational purposes. If the planning board determines that a suitable park or parks of adequate size can not be properly located in any such plat or is otherwise not practical, the board may require as a condition to approval of any such plat a payment to the town of a sum to be determined by the town board, which sum shall constitute a trust fund to be used by the town exclusively for neighborhood park, playground or recreation purposes including the acquisition of property” (emphasis added).
 

 Land Development Regulation §44.15 provides that the amount of the fee in lieu of land reservation is to be determined by the Town Board. Pursuant to section 44.15, the Town Board had fixed the amount of the fee for the type of land involved here at $5,000 per lot. The total fee for petitioner’s subdivision, as presently computed, is $570,000: $5,000 for each of the 114 lots added by virtue of the subdivision to petitioner’s original one lot
 
 (see,
 
 brief of petitioner-appellant, at 2, n 3).