[688 NYS2d 848]

In the Matter of PENFIELD PANORAMA AREA COMMUNITY, INC., Respondent-Appellant, v TOWN OF PENFIELD PLANNING BOARD, Respondent, and CHRISANNTHA, INC., Appellant-Respondent.

Fourth Department, March 19, 1999

**APPEARANCES OF COUNSEL**

*Green & Seifter, P. C.,* Syracuse (*Kevin McAuliffe* of counsel), for appellant-respondent.

*Knauf Craig Koegel & Shaw, L. L. P.,* Rochester (*Alan Knauf* of counsel), for respondent-appellant.

*Joseph A. Platania,* Rochester, for respondent.

**OPINION OF THE COURT**

DENMAN, P. J.

Respondent Chrisanntha, Inc. (Chrisanntha) appeals and petitioner cross-appeals from a judgment (denominated order and judgment) of Supreme Court that annulled a determination by respondent Town of Penfield Planning Board (Planning Board) approving a cluster subdivision. The court held that the cluster subdivision violated height requirements of the Town of Penfield Zoning Ordinance (Zoning Ordinance); the court, however, dismissed the remaining causes of action. We conclude that the court properly annulled the Planning Board's determination approving the cluster subdivision, but for reasons different from those stated by the court in its decision.

In 1996 Chrisanntha submitted to the Planning Board a sketch plan for two seven-story 100-unit apartment buildings and eight townhouse units in a Multiple Residence (MR) district. After numerous meetings with members of the Planning Board and other municipal officials, Chrisanntha applied for cluster subdivision approval of two eight-story apartment buildings with 212 units, 24 townhouses, and two lots with existing residences. In conjunction with that application, Chrisanntha submitted a "Conventional Zoning Plan", dated August 28, 1997, showing what could be built on the parcel as zoned, subject to legal and physical requirements.

Because the Planning Board concluded that the project might have a significant adverse impact on the environment, a Draft Environmental Impact Statement (DEIS) was prepared, a public hearing was held, and comments on the DEIS were submitted by members of the public. Following issuance of the Final Environmental Impact Statement (FEIS), the Planning Board approved the project subject to various conditions, including a requirement that Chrisanntha "perform specific site characterization that will result in an acceptable remedial action plan" for the cleanup of hazardous waste on the site. That condition further required Chrisanntha to seek approval of its remedial action plan from the Monroe County Department of Health (MCDOH) and the New York State Department of Environmental Conservation (NYSDEC).

Petitioner/plaintiff (hereinafter petitioner), a nonprofit organization made up of citizens residing in the vicinity of the project, filed a CPLR article 78 petition/complaint (hereinafter petition) for a declaratory judgment challenging the approval on the following grounds: the density calculations violated Town Law § 278 and the Zoning Ordinance; Town Law § 278

did not authorize the Planning Board to grant height variances; the application of Town Law § 278 was not appropriate because there was no "subdivision" of land; the Zoning Ordinance required greater parking than was provided in the application; the project did not "benefit the town" as required by Town Law § 278 (3) (a); the project violated the provisions of the Town's Environmental Protection Overlay District (EPOD); and the environmental impact review process pursuant to the State Environmental Quality Review Act ([SEQRA] ECL art 8; 6 NYCRR part 617) was flawed. In response to the petition, Chrisanntha and the Planning Board argued that petitioner did not have standing because it was formed after the Planning Board approved the project.

 Initially, we agree with the court's conclusion that petitioner has standing because its members satisfied their burden of establishing that they were aggrieved by the project (*see generally, Matter of Dental Socy. v Carey*, 61 NY2d 330; *Matter of Douglaston Civic Assn. v Galvin*, 36 NY2d 1). We note that petitioner has limited the arguments in its brief to the issues of height variance, density calculation, subdivision, EPOD and SEQRA violations, and alteration of nonconforming uses. Thus, petitioner has abandoned any contentions with regard to dismissal of the remaining causes of action (*see, Ciesinski v Town of Aurora*, 202 AD2d 984).

### HEIGHT VARIANCE

 The court concluded that Town Law § 278 did not authorize the Planning Board to vary height restrictions set forth in the Zoning Ordinance and thus granted the petition, annulled the determination and remanded the issue of a height variance to the Zoning Board of Appeals. That was error.

"Cluster development * * * is a form of subdivision development which enables units to be located on a site in a manner that does not comply with the bulk requirements of the applicable zoning law * * * Cluster development enables dwellings or other structures to be constructed on the most suitable portion of the property, thereby resulting in the preservation of tracts of land in their natural state.

"In order to accomplish the clustering of development, a town board may authorize the planning board to approve an alternate development which deviates from minimum area, side and rear yard, depth, frontage, and similar requirements" (Rice, Practice Commentaries, McKinney's Cons Laws of NY, Book 61, Town Law § 278, 1999 Pocket Part, at 303). The Court

of Appeals has held that, pursuant to Town Law § 278, a planning board has the discretion to "permit deviation from applicable minimum area, side and rear yard, depth, and frontage requirements" (*Matter of Bayswater Realty & Capital Corp. v Planning Bd.*, 76 NY2d 460, 467). The issue raised on this appeal, which appears to be one of first impression in New York, is whether, pursuant to Town Law § 278, the Planning Board may permit deviation from applicable height requirements as part of cluster subdivision approval, or whether that determination must be made by the Zoning Board of Appeals, which otherwise is empowered to grant area variances.

We conclude that, pursuant to Town Law § 278, planning boards have the authority to allow deviation from applicable height requirements. There is no significant distinction between the authority to vary "outward" restrictions, such as setbacks, and the authority to vary "upward" restrictions. In both cases, the use of the property is not changed (*see, Matter of Boyadjian v Board of Appeals*, 136 AD2d 548 [fences are permitted uses, thus request for a higher fence requires an area variance, not a use variance]). The statute itself suggests that a planning board has the authority to vary height restrictions by the requirement therein that the applicant provide the planning board with a plat showing the cluster development, including "areas within which structures may be located, the *height* and spacing of buildings, open spaces and their landscaping, off-street open and enclosed parking spaces, streets, driveways and any other features required by the planning board" (Town Law § 278 [3] [d] [emphasis added]). The purpose of the cluster subdivision statute is "to enable and encourage flexibility of design and development of land in such a manner as to preserve the natural and scenic qualities of open lands" (Town Law § 278 [2] [b]). Allowing a planning board to consider deviations from height restrictions is no different from allowing it to consider deviations from other size restrictions and will not "authorize a change in the permissible use of such lands as provided in the zoning ordinance or local law applicable to such lands" (Town Law § 278 [6]). Thus, the court erred in granting the relief sought in the petition with respect to the second cause of action and remanding the matter to the Zoning Board of Appeals.

DENSITY CALCULATION

█ Petitioner further contends that the Planning Board's density calculation violated Town Law § 278 and the Zoning

Ordinance because the Planning Board failed to subtract certain acreage in making its density calculation. The Planning Board responds that it properly considered each of the issues raised by petitioner and subtracted all appropriate acreage. We conclude that the Planning Board erred in failing to subtract acreage for roads and streets and for storm water detention areas in making its density calculation.

"The determination of the permissible density of development is a key stage in the processing of a cluster application.

"A conventional subdivision layout is required in order to determine the density for a cluster development [citations omitted]. The proposed plat must result in a standard layout that, consistent with applicable zoning regulations and practical considerations, could be approved by a planning board. Therefore, the conventional plat must depict lots which comply with all requirements of the zoning law and must consider environmental constraints on development as well as roads, parks and other attributes which would reduce the development yield of the property" (Rice, *op. cit.*, at 306).

The statute provides that a "cluster development shall result in a permitted number of building lots or dwelling units which shall in no case exceed the number which could be permitted, in the planning board's judgment, if the land were subdivided into lots conforming to the minimum lot size and density requirements of the zoning ordinance or local law applicable to the district or districts in which such land is situated and conforming to all other applicable requirements" (Town Law § 278 [3] [b]). Thus, an applicant must first provide the municipality with a plan showing maximum usage of the property in accordance with applicable zoning and other lawful restrictions (*see, Done Holding Co. v State of New York*, 144 AD2d 528, *lv denied* 73 NY2d 710, citing *Matter of Friends of Shawangunks v Knowlton*, 64 NY2d 387, 394-395). Where the applicant submits an alternative subdivision layout containing lots that do not conform to the minimum lot size and other requirements of the zoning ordinance, the approval will be annulled because the density calculation is incorrect (*see, Matter of MacFarlane v Town of Clayton Planning Bd.*, 216 AD2d 860; *cf., Matter of Purchase Envtl. Protective Assn. v Town Bd.*, 212 AD2d 532, *lv denied* 86 NY2d 708).

Here, the parties agree that the parcel consists of 19.278 acres. The Planning Board subtracted approximately .1 acre for land located in a 10-year flood plain; the Zoning Ordinance prohibits any development in such an area. The Planning

Board concluded, however, that no other subtractions were required.

We conclude that the Planning Board should have subtracted all land identified on the Conventional Zoning Plan for "roads and streets" (Zoning Ordinance § 8-3 [J]). Respondents argue that the roads and streets within the cluster subdivision will be private, not public, and thus should not be subtracted. The ordinance, however, does not distinguish between public and private roads and streets, and thus that acreage should have been subtracted. We further conclude that the Planning Board should have subtracted acreage identified on the Conventional Zoning Plan as "Stormwater Detention Area" because that is an area "unsuited for development" (Zoning Ordinance § 8-3 [J]). Chrisanntha concedes that the "Stormwater Detention Area" is 1.2 acres. Chrisanntha's decision to include that area on the Conventional Zoning Plan represents a determination that a storm water detention area is required from an engineering point of view, and there is no dispute that the area is thus "unsuited for development".

We reject petitioner's contention that other areas should have been subtracted from the density calculation. Petitioner contends that the Planning Board should have subtracted the area required for buffering on the residential parcel. We disagree. The Zoning Ordinance requires a 50-foot buffer for any residential parcel that abuts a Limited Business or Business Non-Retail parcel. The ordinance states that a buffer area of at least 50 feet "shall be provided along the boundary line between" the Limited Business or Business Non-Retail district and any abutting residential district (Zoning Ordinance § 4-2 [A]). Although subdivision (A) of section 4-2 does not specify where the buffer must be located, other subdivisions of section 4-2 require that the buffer be located along the boundary of the nonresidential district. That requirement is consistent with the requirement that the buffer include grass, trees, hedges, shrubs or earthen berms (see, Zoning Ordinance § 4-2 [D]). We conclude that it would be an undue burden to hold the owner of a residential parcel responsible for creating the buffer, and thus that area need not be subtracted.

Petitioner further contends that the Planning Board should have subtracted acreage for recreational areas, fire lanes and a clear vision zone. We reject that contention. The Conventional Zoning Plan does not show any recreational areas, and the Zoning Ordinance does not require that the developer set aside land for parks or recreational use in a cluster subdivision (see,

Zoning Ordinance § 8-3 [I]). Nor is there any requirement that lands for fire lanes or clear vision zones be subtracted from density calculation.

There also is no merit to the contention that the Planning Board should have subtracted 2.1 acres of the parcel located in a floodplain. The Zoning Ordinance prohibits any structures from being built in a 10-year floodplain (Zoning Ordinance § 3-14 [C] [2] [a]), and the Planning Board apparently deducted .1 acre located in the 10-year floodplain. The Planning Board was not required to subtract acreage located within the 100-year floodplain, however, because the Zoning Ordinance authorizes the Planning Board to approve construction in such area. Thus, that acreage is not "unsuited for development". Similarly, the Zoning Ordinance authorizes construction within a Steep Slope Protection District (Zoning Ordinance § 3-12 [D]). There is evidence in the record that construction on those parts of the parcel within a Steep Slope Protection District, while requiring extensive environmental review and control, is "technically achievable". Thus, that area is not "unsuited for development".

### SEQRA

■ Petitioner contends that the environmental impact review process was flawed in several ways, e.g., the DEIS inadequately discussed growth-inducing aspects of the project, reasonable alternatives and public need for the project. The record establishes, however, that, with the exception of one area, the Planning Board took a " 'hard look' " at the environmental impact of the project and "made a 'reasoned elaboration' of the basis for its determination" (*Matter of Jackson v New York State Urban Dev. Corp.*, 67 NY2d 400, 417; *see, Aldrich v Pattison*, 107 AD2d 258, 265). We agree with petitioner, however, that the Planning Board improperly deferred resolution of the hazardous waste remediation issue.

The FEIS states that "primary areas of concern" containing hazardous waste have been identified and "additional characterization is required". The FEIS additionally states that "some site clean-up may also be required". The Planning Board conditioned its approval of the project on Chrisanntha's agreement to get approval of a site remediation plan from the NYSDEC and MCDOH before any construction begins. In our view, however, deferring resolution of the remediation was improper because it shields the remediation plan from public scrutiny, and thus the court properly annulled the determination of the Planning Board.

A lead agency under SEQRA may not delegate its responsibilities to any other agency (*see, Matter of Coca-Cola Bottling Co. v Board of Estimate*, 72 NY2d 674, 682-683). Although a lead agency without environmental expertise to evaluate a project may rely on outside sources and the advice of others in performing its function (*see, Matter of Coca-Cola Bottling Co. v Board of Estimate, supra*, at 682; *Matter of Stewart Park & Reserve Coalition v New York State Dept. of Transp.*, 157 AD2d 1, 7, *affd* 77 NY2d 970; *see also*, 6 NYCRR 617.14 [c] [2]), it must exercise its critical judgment on all of the issues presented in the DEIS (*cf., Matter of Tonery v Planning Bd.*, 256 AD2d 1097; *Matter of New York Archaeological Council v Town Bd.*, 177 AD2d 923; *Town of Red Hook v Dutchess County Resource Recovery Agency*, 146 Misc 2d 723, *lv denied* 76 NY2d 713; *see generally*, 2 Gerrard, Ruzow & Weinberg, Environmental Impact Review in New York § 8.06 [1], at 8-27). Thus, by deferring resolution of the hazardous waste remediation issue, the Planning Board failed to take the requisite hard look at an area of environmental concern (*cf., Matter of Tonery v Planning Bd., supra*).

We have considered the remaining contentions of petitioner and conclude that they are without merit.

Accordingly, the judgment should be affirmed.

PINE, PIGOTT, JR., CALLAHAN and BALIO, JJ., concur.

Judgment unanimously affirmed, without costs.